13 CV 1319

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
GOLDMAN, SACHS & CO.,             :
                Plaintiff,        :   Case No.
                                  :
        v.                        :
                                  :   ECF Case     RECEIVED
NORTH CAROLINA MUNICIPAL          :              FEB 27 2013
POWER AGENCY NUMBER ONE,          :
                Defendant.        :              CASHIERS
------------------------------------x

## COMPLAINT

Plaintiff Goldman, Sachs & Co. ("Goldman Sachs"), by and through its undersigned attorneys, hereby alleges as follows for its complaint against defendant North Carolina Municipal Power Agency Number One ("NCMPA1"):

### NATURE OF THE ACTION

1.  This is an action to enjoin an arbitration that NCMPA1 brought against Goldman Sachs before the Financial Industry Regulatory Authority ("FINRA") on December 21, 2012, captioned *North Carolina Municipal Power Agency Number One v. Goldman, Sachs & Co. and Morgan Stanley & Co., Inc.*, FINRA No. 13-00005 (the "FINRA Arbitration").

2.  As detailed below, the arbitration is brought by the same underlying sponsors who have initiated many substantively similar arbitrations on behalf of issuers of auction rate securities against underwriters, including one initiated by Golden Empire Schools Financing Authority and Kern High School District (collectively "Golden Empire") against Goldman Sachs, which this Court recently enjoined in light of those parties' exclusive forum selection clause designating this Court for any disputes. *See Goldman, Sachs & Co. v. Golden*

*Empire Schools Fin. Auth.*, No. 12-cv-4558, 2013 WL 500888 (S.D.N.Y. Feb. 8, 2013).[1] NCMPA1's arbitration claims against Goldman Sachs should be enjoined for the same reason.

3. The claims brought by NCMPA1 against Goldman Sachs in the FINRA Arbitration are contained in its Statement of Claim filed with FINRA on December 21, 2012. The Statement of Claim is attached hereto as Exhibit 2. NCMPA1's claims against Goldman Sachs concern Goldman Sachs' role as the underwriter for a 2003 issuance of auction rate securities ("ARS") by NCMPA1 and role as a broker-dealer in ensuing auctions relating to the ARS.[2] As was the case with Golden Empire, all of NCMPA1's claims are subject to an exclusive forum selection clause requiring it to bring any disputes with Goldman Sachs before this Court, not before FINRA.

4. The FINRA Arbitration is one of dozens of copycat arbitrations instigated by a group of financiers and lawyers who organized a litigation finance firm, Abbington Partners, LLC ("Abbington") to manufacture FINRA arbitrations on behalf of issuers of auction rate securities ("ARS"). Abbington's founders, as well as counsel for many of the issuers, have admitted that they chose to file all these ARS issuer claims in FINRA—despite the fact that some issuers signed clear forum selection clauses agreeing to bring claims related to their ARS in federal court—because FINRA's 6-year "eligibility" statute of limitations is longer, in most instances, than the state statutes of limitations that govern their time-barred claims, and because FINRA offers litigants fewer opportunities for dismissal at the pleading stages. Indeed, the reason NCMPA1 filed its claims before FINRA is simple and transparent on its face: all of

---

[1] Attached as Exhibit 1.

[2] NCMPA1 also asserts claims in the FINRA Arbitration against Morgan Stanley & Co., Inc. ("Morgan Stanley") related to Morgan Stanley's role as underwriter and broker-dealer for a 2005 issuance of ARS by NCMPA1.

NCMPA1's claims are time-barred under the applicable statutes of limitation and fly in the face of its own disclosures, and would be subject to dismissal at the outset by this Court. NCMPA1 is attempting to use the FINRA forum to circumvent, or at least forestall focus on, the applicable statutes of limitation and other facial deficiencies of its claims.[3]

5. FINRA is an improper forum for NCMPA1 to bring its claims against Goldman Sachs for the same reasons determined by the Court in *Golden Empire*. The agreement governing the relationship between the parties giving rise to NCMPA1's claims contains an exclusive forum selection clause that provides that ***"all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York."*** (Ex. 3 (Broker-Dealer Agreement) at 14 (emphasis added)) Accordingly, the Court should declare that the parties' dispute is not arbitrable and enjoin the FINRA Arbitration.

## THE PARTIES

6. Plaintiff Goldman Sachs is a limited partnership organized under the laws of the State of New York, with its principal office located in New York, New York. Goldman Sachs has one general partner and one limited partner. Its general partner is The Goldman, Sachs

---

[3] Unsurprisingly, courts have consistently rejected the types of baseless claims that NCMPA1 has brought against Goldman Sachs, all of which ignore the issuers' own knowledge of disclosures about "cover" bids and the potential for auction failures. *See, e.g., Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108-11 (2d Cir. 2012); *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 337-38 (2d Cir. 2011); *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 135-36 (2d Cir. 2011); *In re JP Morgan Auction Rate Sec. Litig.*, 867 F. Supp. 2d 407, 426-27 (S.D.N.Y. 2012); *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 525-26 (S.D.N.Y. 2012); *In re Merrill Lynch Auction Rate Sec. Litig.*, 765 F. Supp. 2d 375, 381-82 (S.D.N.Y. 2011); *In re Merrill Lynch Auction Rate Sec. Litig.*, 2011 WL 536437, at *6-7 (S.D.N.Y. Feb. 9, 2011); *In re Merrill Lynch Auction Rate Sec. Litig.*, 758 F. Supp. 2d 264, 277-79 (S.D.N.Y. 2010); *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 390-92 (S.D.N.Y. March 31, 2010); *In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *22 (S.D.N.Y. June 10, 2010).

& Co. L.L.C., a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York, and whose sole member is The Goldman Sachs Group, Inc. Goldman Sachs' limited partner is The Goldman Sachs Group, Inc., a corporation organized under the laws of the State of Delaware with its principal place of business in New York.

7. Defendant NCMPA1 is a public municipal agency organized and existing under Chapter 159B of the General Statutes of North Carolina. According to its Statement of Claim in the FINRA Arbitration, NCMPA1 is a public agency covering 19 cities and towns in Piedmont and western North Carolina for which it provides wholesale bulk power services. (Ex. 2 (SOC) ¶¶ 1, 21) NCMPA1 has considerable experience with the issuance of debt products—including ARS—and contract negotiation.

8. In entering into the contracts governing the relationships between the parties, NCMPA1 was advised by sophisticated and experienced law firms, Poyner & Spruill LLP ("Poyner & Spruill") as counsel and Hawkins Delafield & Wood LLP ("Hawkins Delafield & Wood") as bond counsel. (Ex. 4 (Excerpts of 2003 Official Statement) at i)

## JURISDICTION AND VENUE

9. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Federal Rule of Civil Procedure 57, and for injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Specifically, NCMPA1 seeks through the FINRA Arbitration "millions of dollars" of damages. (Ex. 2 (SOC) ¶ 97)

11. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Goldman Sachs' request for an injunction and declaratory judgment necessarily presents questions of federal law because NCMPA1's claims in the FINRA Arbitration include claims under Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 promulgated thereunder.

12. This Court has personal jurisdiction over NCMPA1 because NCMPA1 contractually consented to the Court's jurisdiction in NCMPA1's broker-dealer agreement with Goldman Sachs. (Ex. 3 (Broker-Dealer Agreement) at 14) Additionally, this Court has personal jurisdiction over NCMPA1 because this action arises out of activities undertaken by NCMPA1 within this District in connection with its issuance of ARS, including but not limited to entering into underwriter and broker-dealer agreements with Goldman Sachs.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district. In addition, venue is proper because NCMPA1 contractually consented to the venue of this judicial district in its Broker-Dealer Agreement with Goldman Sachs. (Ex. 3 (Broker-Dealer Agreement) at 14)

## FACTUAL BACKGROUND

### The 2003 ARS Issuance

14. On April 11, 2003, NCMPA1 elected to issue approximately $149.7 million in ARS debt for purposes of refunding its outstanding debt. NCMPA1 chose Goldman Sachs to be the sole underwriter and broker-dealer for the ARS. The ARS were issued pursuant to an underwriter agreement between NCMPA1 and Goldman Sachs, dated April 17, 2003 (the "Underwriter Agreement"). NCMPA1 was advised by its independent, experienced legal

counsel, Poyner & Spruill and Hawkins Delafield & Wood, throughout the negotiation and execution of this agreement. The Underwriter Agreement sets forth Goldman Sachs's limited duties in connection with the underwriting: fundamentally, to purchase NCMPA1's ARS, distribute them to interested investors as *bona fide* securities, and perform other duties relating to the purchase and resale of the ARS. (Ex. 5 (Underwriter Agreement) at 2, 6)

15. Simultaneously with entering into the Underwriter Agreement, Goldman Sachs and NCMPA1 agreed that Goldman Sachs would also serve as broker-dealer for the ARS, and those services were provided pursuant to a contract, dated April 24, 2003 (the "Broker-Dealer Agreement"). Again, NCMPA1 was advised by Poyner & Spruill and Hawkins Delafield & Wood throughout the negotiation and execution of this agreement. As with the Underwriter Agreement, the Broker-Dealer Agreement sets forth Goldman Sachs' limited duties: fundamentally, to work with an auction agent to manage the auctions for the ARS, to calculate the rate on the ARS, to communicate the auction results to the auction agent, and to perform other duties in connection with the management and conduct of the auctions. (Ex. 3 (Broker-Dealer Agreement) at 3-7)

16. The Broker-Dealer Agreement contains a specific forum selection clause providing that the parties will bring any disputes arising out of the contract or any transactions contemplated by the contract in New York federal district court:

> The parties agree that ***all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York*** and that, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such court.

(*Id.* at 14 (emphasis added))

17. The Underwriter Agreement, which was negotiated simultaneously with the Broker-Dealer Agreement as part of the same transaction, contains no agreement to arbitrate, and provides that North Carolina law governs its validity, interpretation, and performance. (*See* Ex. 5 (Underwriter Agreement) at 19)

18. The Underwriter Agreement and the Broker-Dealer Agreement were negotiated simultaneously and executed contemporaneously as part of the set of contracts that governed NCMPA1's 2003 ARS issuance. Both agreements were the result of arm's-length negotiations between Goldman Sachs and NCMPA1, as well as NCMPA1's counsel.

19. The Broker-Dealer Agreement also contains a merger clause providing as follows:

> This Broker-Dealer Agreement, ***and the other agreements and instruments executed and delivered in connection with the issuance of the*** []***ARS***, contain the ***entire agreement between the parties relating to the subject matter hereof***, and there are ***no other*** representations, endorsements, promises, agreements or understandings . . . between the parties relating to the subject matter hereof.

(Ex. 3 (Broker-Dealer Agreement) at 13 (emphasis added))

**The FINRA Arbitration**

20. On December 21, 2012—almost five years after the first ARS auctions began to fail, and long past the expiration of the two- and three-year statutes of limitation governing its claims—NCMPA1 filed a Statement of Claim with FINRA, thereby instituting arbitration proceedings against Goldman Sachs. FINRA gave notice to Goldman Sachs of the Statement of Claim on January 8, 2013.

21. In its Statement of Claim, NCMPA1 alleges that, in connection with its role as underwriter and broker-dealer for the NCMPA1 ARS, "[Goldman Sachs] had . . . superior

knowledge about the ARS structure and the ARS market . . . [and] failed to disclose to NCMPA1 material facts . . . ." (Ex. 2 (SOC) ¶¶ 98-99)  NCMPA1 also alleges that Goldman Sachs routinely placed "support bids" in order to "create[] the artificial appearance of a liquid and efficient market" for ARS (*id.* ¶ 11), and that, in February 2008, when Goldman Sachs "decided without warning to stop supporting the ARS market[,] [t]he ARS market promptly collapsed, and the rates on [NCMPA1's] ARS skyrocketed." (*Id.* ¶ 4)  NCMPA1 claims that, as a result of Goldman Sachs' decision to discontinue submitting "support bids" at auctions for NCMPA's ARS, it "paid much higher interest payments and sustained other damages, such as costs of refinancing." (*Id.* ¶ 4)[4]

    22. The relief NCMPA1 seeks in the FINRA Arbitration consists of actual, compensatory, punitive, and consequential damages; restitution and disgorgement of all fees and costs associated with the ARS, including broker-dealer fees; and its fees and costs associated with the FINRA Arbitration. (*Id.* at 37)

    23. NCMPA1's claims and theories are specious, particularly in light of its own disclosures and information at its disposal concerning "support bids" and the potential for failed auctions. In any event, Goldman Sachs and NCMPA1 never agreed to arbitrate disputes arising out of NCMPA1's ARS. To the contrary, the Broker-Dealer Agreement—which, along with "the other agreements and instruments executed and delivered in connection with the issuance of the []ARS, contain the *entire agreement* between the parties" related to NCMPA1's ARS (Ex. 3 (Broker-Dealer Agreement) at 13 (emphasis added))—specifically provides that any

---

[4] NCMPA1 brings claims for (i) breach of fiduciary duty, (ii) fraud, (iii) negligent misrepresentation, (iv) violation of Section 10(b) of the Exchange Act, and (v) violations of the North Carolina Securities Act, and (vi) breach of MSRB/NASD duties. (Ex. 2 (SOC) ¶¶ 98-117)

disputes arising out of NCMPA1's ARS shall be brought, if at all, in the United States District Court in the County of New York, thereby plainly precluding arbitration.

24.   Goldman Sachs' answer to NCMPA1's Statement of Claim is due on February 27, 2013, which it intends to file with FINRA solely in order to avoid the possibility of defaulting in the FINRA Arbitration. Goldman Sachs' answer will expressly reserve Goldman Sachs' right to object to the arbitrability of NCMPA1's claims before FINRA.

**The *Golden Empire* Case**

25.   On June 11, 2012, Goldman Sachs commenced in this Court a similar action, captioned *Goldman, Sachs & Co.* v. *Golden Empire Schools Financing Authority, et al.*, Case No. 12-cv-4558 (RJS), in order to enjoin an arbitration brought by Golden Empire, another ARS issuer, based on allegations materially identical to those advanced in NCMPA1's Statement of Claim. After briefing and oral argument, Judge Sullivan issued an order preliminarily enjoining the Golden Empire arbitration, holding that Goldman Sachs was likely to succeed in showing that the broad merger clause and exclusive forum selection clause contained in the parties' broker-dealer agreements precluded arbitration, and required that Golden Empire bring its claims in this Court, not before FINRA. (Ex. 1 (*Golden Empire* Memorandum and Order) at 8-9) The merger and forum selection clauses that were the basis for the Court's order in *Golden Empire* are identical—word for word—to the merger and forum selection clauses in the Broker-Dealer Agreement here.

## CAUSES OF ACTION
## COUNT I
### (For a declaratory judgment)

26. Goldman Sachs repeats and realleges paragraphs 1 through 25 as though fully set forth herein.

27. The parties contractually agreed to bring any dispute related to NCMPA1's ARS exclusively in this Court. Goldman Sachs' valid and binding agreement with NCMPA1 supersedes any right that NCMPA1 may have had to arbitrate under the FINRA Code of Arbitration Procedure.

28. Goldman Sachs is compelled to seek relief in this Court because arbitration is a creature of contract, and a FINRA arbitration panel has no authority to decide whether the parties have submitted to it under the terms of their contract. It is well-settled law that only a court can determine whether parties agreed to arbitrate and, under the terms of the Goldman Sachs' contracts with NCMPA1, this Court is the parties' exclusive chosen forum.

29. As a matter of law, unless NCMPA1 is enjoined from pursuing its claims in the FINRA Arbitration, Goldman Sachs will suffer irreparable harm because it will (i) be deprived of its right to select the forum in which it expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute it has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense of defending itself in the arbitration proceeding, or risk an adverse outcome in those proceedings, even though Goldman Sachs is not legally compelled to arbitrate NCMPA1's stale claims. Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

30. Declaratory relief from this Court will resolve this controversy.

31. As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties and liabilities of the parties. Goldman Sachs therefore requests a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure that NCMPA1's claims are not arbitrable and that NCMPA1 must bring its claims, if at all, in this Court.

## COUNT II
### (For injunctive relief)

32. Goldman Sachs repeats and re-alleges paragraphs 1 through 31 as though fully set forth herein.

33. NCMPA1 has asserted claims for compensatory, consequential, and punitive damages against Goldman Sachs in the FINRA Arbitration and, on information and belief, unless enjoined, will continue to pursue such claims.

34. As a matter of law, unless NCMPA1 is enjoined from pursuing its claims in the FINRA Arbitration, Goldman Sachs will suffer irreparable harm because it will (i) be deprived of its right to select the forum in which it expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute it has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense of defending itself in the arbitration proceeding, or risk an adverse outcome in those proceedings, even though Goldman Sachs is not legally compelled to arbitrate NCMPA1's stale claims. Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

35. The balance of equities weighs heavily in favor of an injunction.

36. The public interest would be served by enjoining NCMPA1 from pursuing its time-barred and meritless claims against Goldman Sachs in the FINRA Arbitration because the parties' agreement precludes arbitration of this dispute.

## PRAYER FOR RELIEF

WHEREFORE, Goldman Sachs respectfully requests that this Court enter an order:

1. Declaring that (a) FINRA is not an appropriate forum to resolve a dispute between Goldman Sachs and NCMPA1 pursuant to their contracts related to ARS; and (b) FINRA has no jurisdiction to adjudicate the FINRA Arbitration;

2. Preliminarily and permanently enjoining NCMPA1 from pursuing any claims against Goldman Sachs in the FINRA Arbitration;

3. Awarding Goldman Sachs' costs of suit; and

4. Granting such other relief as may be just and proper.

Dated: February 27, 2013
      New York, New York

By: *Matthew A. Schwartz*
SULLIVAN & CROMWELL LLP
David H. Braff
Matthew A. Schwartz
125 Broad Street
New York, NY  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3500
Email:  braffd@sullcrom.com
        schwartzmatthew@sullcrom.com

*Attorneys for Plaintiff
Goldman, Sachs & Co.*