**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
GOLDMAN SACHS, & CO.,
                                              :   Case No. 13 CV 1319
                                              :   Judge Paul A. Crotty
                              Plaintiff,      :
                                              :   MEMORANDUM IN
        -against-                             :   SUPPORT OF MOTION TO DISMISS
                                              :   OR, ALTERNATIVELY,
NORTH CAROLINA MUNICIPAL                      :   TO TRANSFER FOR
POWER AGENCY NUMBER ONE,                      :   IMPROPER VENUE
                                              :
                              Defendant.      :
------------------------------------------------------------ x
```

575314v.4

**TABLE OF CONTENTS**

**Page (s)**

Table of Contents ...............................................................................................................i

Summary of Argument ......................................................................................................1

Factual Background............................................................................................................2

      A.       NCMPA hired Goldman to structure and underwrite a bond issuance  .. ..............3

      B.       As Goldman's customer, NCMPA demanded FINRA arbitration of its claims. ....4

      C.       The arbitration is scheduled to proceed in North Carolina.....................................5

      D.       Goldman Sachs seeks to enjoin the arbitration based on a Governing Law clause;
             the United States Fourth Circuit has rejected this argument. .................................6

Argument ...........................................................................................................................7

      I.     The Federal Arbitration Act sets venue for motions to compel or enjoin
        arbitration.. ...........................................................................................................7

      II.    The venue provisions of § 4 of the FAA are also applicable to motions to enjoin
        arbitration. ...........................................................................................................10

      III.   Goldman's arguments to the contrary are unavailing...........................................14

Conclusion.......................................................................................................................17

575314v.4

Defendant North Carolina Municipal Power Agency Number One ("NCMPA") respectfully submits this memorandum in support of its motion to dismiss or, alternatively, to transfer for improper venue the complaint filed by Goldman Sachs, & Co. ("Goldman").

## SUMMARY OF ARGUMENT

Goldman brought this action to enjoin a Financial Industry Regulatory Authority ("FINRA") arbitration filed by NCMPA. Pursuant to the FINRA Rules, which constitute the arbitration agreement between the parties, the arbitration is to be held in Raleigh, North Carolina, within the Eastern District of North Carolina. Thus, Goldman is asking this court to enjoin an arbitration that it has agreed to hold in another judicial district.

Section 4 of the Federal Arbitration Act provides that venue for an action to compel arbitration lies only in the district court where the parties have agreed to hold the arbitration. The courts that have considered venue for actions to enjoin arbitration have concluded that Section 4's venue provisions apply equally to actions to enjoin arbitration, because staying arbitration is simply the inverse of compelling arbitration and any other result leads to forum shopping, races to the courthouse, and duplicative and possibly inconsistent litigation. Venue is particularly important in this matter, because the relief which Goldman seeks in this action has been foreclosed by the Fourth Circuit's holding in the *Carilion* matter, which would be binding precedent in the proper venue.

Because the relief sought by Goldman in this action must be sought in the Eastern District of North Carolina, this court should, under Federal Rule of Civil Procedure Rule 12(b)(3) and 28 U.S.C. § 1406(a), either dismiss this action of, in the interest of justice, transfer it to the Eastern District of North Carolina.

575314v.4

## FACTUAL BACKGROUND

### A.  NCMPA hired Goldman to structure and underwrite a bond issuance

NCMPA is a public body comprised of 19 cities and towns in piedmont and western North Carolina.  NCMPA provides wholesale bulk power service to its 19 members.

In 2003, NCMPA sought to refinance earlier debt, and hired Goldman as an underwriter to structure and underwrite a bond issuance.  The 2003 bond issuance was a negotiated transaction, meaning that Goldman assisted NCMPA in determining the proper structure for the transaction.  Goldman's role in providing NCMPA advice and recommendations about the proper structure of the transaction is evidenced by the fact that Goldman charged NCMPA a "management fee" for the transaction, which represents a payment from NCMPA to Goldman for, among other things, Goldman's work structuring the transaction.[1]

Goldman recommended that NCMPA issue a portion of its 2003 bonds as auction rate securities ("ARS").  ARS are variable-rate bonds with interest rates that reset based on periodic auctions, which typically are held once per week or month.  ARS are sold in a process sometimes referred to as a "Dutch auction."  In each periodic auction, existing holders and potential buyers place bids based on the number of bonds they would be willing to hold at a particular interest rate.  The resulting interest rate for the following period, known as the "clearing rate," is the lowest interest rate at which all bonds can be sold.  That clearing rate becomes the market rate for all outstanding ARS until the following auction.  Importantly, if there are insufficient bids to sell all of the ARS offered for sale in a periodic auction, the auction "fails" and the interest rate for the bonds until the next successful auction defaults to a contractual maximum rate – here, 12%.

---

[1] *See* Declaration of Susan Ingram, ¶ 3; *Id.*, Exhibit A at 3.

ARS were marketed to investors as a substitute for money-market funds because ARS offered slightly higher yields and could be redeemed at par in any periodic auction. ARS were marketed to issuers as a means of issuing long-term debt at short-term variable interest rates because, unlike most other forms of variable-rate debt, ARS could not be redeemed from the issuer until maturity. Finally, ARS were attractive to underwriters like Goldman for the simple reason that the remarketing fees were dramatically higher than for other variable-rate debt. Broker-dealer fees for ARS were typically twenty-five (25) basis points annually, three to four times higher than the remarketing fees for traditional variable-rate debt, such as VRDOs.

In April 2003, NCMPA issued $149,700,000 of ARS. Goldman underwrote the issuance, and served as broker-dealer for the ARS.

In connection with the issuance, Goldman disclosed to NCMPA that in the ARS market, a broker-dealer "may submit an Order in Auctions for its own account."[2] Goldman did not disclose that it "**always** placed a bid in **every** auction in which it was lead broker-dealer to prevent auction failure, and that Goldman was aware **at all times** that if it failed to place a bid for its own account in the auctions it managed, a large number (~50%) of the auctions **would fail** and the market for ARS **would collapse**."[3] ARS looked like an attractive product to investors and issuers like NCMPA only because Goldman was manipulating the auctions by placing undisclosed support bids to create the artificial impression of liquidity. Without that artificial impression of liquidity, investors would not be willing to accept short-term rates to hold ARS, and issuers would not be willing to lock in the structure for many years. Multiple regulators

---

[2] Exhibit 2 to Complaint, Docket No. 1-2, NCMPA's FINRA Statement of Claim (hereafter "SOC"), at ¶ 49.

[3] *Id.*

3

found that Goldman's ARS bidding practices violated the Securities laws.[4]   As another judge in this district found based on similar allegations, "[k]nowingly selling an unwitting client an allegedly more profitable but flawed financial product raises an inference of an intent to obtain an unjust advantage."[5]

On February 12, 2008, Goldman stopped placing bids to prop up its auctions, and many auctions promptly failed.[6]   Even those issuers whose auctions did not fail experienced immediate spikes in their interest rates due to predictable investor flight from the market once the liquidity risks of the product were exposed.[7]   In NCMPA's case, the interest rate on its ARS jumped from 4% on February 6, 2008 to 10% on February 13, 2008.

Following the spike in its interest rates, NCMPA was forced to refinance its bonds at considerable costs and in a difficult market.   As a result, NCMPA has incurred significant damages, in the form of higher interest payments, refinancing fees, and higher interest payments on its refinanced bonds.[8]

## B. As Goldman's customer, NCMPA demanded FINRA arbitration of its claims

Goldman is a FINRA member.  NCMPA is Goldman's customer, as NCMPA paid for Goldman's services structuring and underwriting the ARS through, *inter alia*, the management fee.  Under FINRA Rule 12200, NCMPA is entitled to demand arbitration of any "dispute" that

---

[4] SOC at ¶¶ 51, 96.

[5] *In re Merrill Lynch Auction Rate Sec. Litig.*, 758 F. Supp. 2d 264, 284 (S.D.N.Y. 2010).

[6] SOC at ¶ 93.

[7] SOC at ¶ 94.

[8] SOC at ¶¶ 94, 97.

575314v.4

"arises in connection with the business activities of the member."[9]   Accordingly, on December

21, 2012, NCMPA filed a statement of claim against Goldman in FINRA.[10]

It does not appear that Goldman is challenging NCMPA's claim that FINRA Rule 12200

permits arbitration of this dispute in this action, although Goldman has previously challenged

that claim in another case.[11]   Nonetheless, the case law is clear that as an issuer of ARS, NCMPA

is entitled to proceed in FINRA arbitration against its underwriter and broker-dealer under

FINRA Rule 12200.[12]   As numerous courts have held, FINRA Rule 12200 creates an arbitration

agreement between a FINRA member and its customer, under which the customer is entitled to

demand arbitration.[13]

## C.  The arbitration is scheduled to proceed in North Carolina

FINRA's rules provide that the FINRA Code is incorporated by reference into any

arbitration agreement between the parties.[14]   Among the provisions of the FINRA Code is a

forum selection clause, pursuant to which the hearing location for a dispute will be "the hearing

---

[9] *See* FINRA Rule 12200, attached to Declaration of Jason Burge as Exhibit A.

[10] *See* SOC.

[11] *See Goldman, Sachs & Co. v. City of Reno*, 3:12-CV-00327-RCJ, 2012 WL 5944966 (D. Nev. Nov. 26, 2012) (holding that an ARS issuer is a customer of its underwriter under FINRA Rule 12200).

[12] *See, e.g., Id.*; *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hospitals, Inc.*, 660 F.3d 643, 645 (2d Cir. 2011); *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 321 (4th Cir. 2013); *J.P. Morgan Sec. Inc. v. Louisiana Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 81 (S.D.N.Y. 2010); *UBS Sec. LLC v. Allina Health Sys.*, CIV. 12-2090 MJD/JJG, 2013 WL 500373 (D. Minn. Feb. 11, 2013).

[13] *Oppenheimer & Co., Inc. v. Neidhardt,* No. 93 Civ. 3854, 1994 WL 176976, at *1 (S.D.N.Y. May 5, 1994), *aff'd,* 56 F.3d 352 (2d Cir.1995);  *J.P. Morgan Sec. Inc. v. Louisiana Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 77 (S.D.N.Y. 2010).  *Accord Kidder, Peabody & Co., Inc. v. Zinsmeyer Trusts P'ship,* 41 F.3d 861, 863–64 (2d Cir.1994) (citing Oppenheimer for the proposition that FINRA's compulsory arbitration rule "constitutes an 'agreement in writing' under the Federal Arbitration Act").

[14] *See* FINRA Rule 12101, attached to Declaration of Jason Burge as Exhibit B.

location closest to the customer's residence at the time of the dispute."[15]   Here, FINRA has

chosen Raleigh, North Carolina as the site of the arbitration.[16]

> ### D. Goldman Sachs seeks to enjoin the arbitration based on a Governing Law clause; the United States Fourth Circuit has rejected this argument

On February 27, 2013, the day its Answer in arbitration was due, Goldman filed the

instant action.   Although this action contains two claims, the gravamen of the action is that

Goldman seeks to enjoin the arbitration scheduled to proceed in Raleigh, North Carolina.[17]

Goldman's allegation is that the arbitration is barred by "an exclusive forum selection clause that

provides that '***all actions and proceedings arising out of this Broker-Dealer Agreement or any***

***of the transactions contemplated hereby shall be brought in the United States District Court in***

***the County of New York.***'"[18]   Goldman contends that any right to arbitration by NCMPA was

"preclud[ed]" by the agreement containing that clause, and therefore NCMPA has no right to

arbitrate these claims.[19]

The instant action is not the first time a court has considered this language in the context

of a dispute between an issuer and underwriter regarding the issuance of ARS.   At least four

courts have considered whether this language precludes arbitration – most notably another judge

in this court, in the *Golden Empire* decision, and the United States Court of Appeals for the

---

[15] *See* FINRA Rule 12213, attached to Declaration of Jason Burge as Exhibit C.   *J.P. Morgan Sec. Inc. v. Louisiana Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 81 (S.D.N.Y. 2010). ("Rule 12213(a) essentially creates a forum selection clause dictating that FINRA, in accordance with its rules, will determine the location of the arbitration.").

[16] *See* 1/8/13 letter from FINRA at 3, attached to Declaration of Jason Burge as Exhibit D.

[17] Complaint, Docket No. 1, ¶ 1 ("This is an action to enjoin an arbitration that NCMPA1 brought against Goldman Sachs before the Financial Industry Regulatory Authority ("FINRA") on December 21, 2012 …").

[18] *Id.* at ¶ 5 (emphasis in original).

[19] *Id.* at ¶ 23.

Fourth Circuit, in the *Carilion* decision.[20]   The Fourth Circuit, notably, has jurisdiction over

Raleigh, North Carolina, where this arbitration is pending.  In *Golden Empire*, another section of

this court ruled that the clause cited by Goldman barred arbitration of the issuer's claims, and

enjoined the pending arbitration.[21]  In *UBS Financial Services, Inc. v. Carilion Clinic*, the Fourth

Circuit rejected the underwriters' "suggestion that the forum selection clause in the broker-dealer

agreements supersedes, displaces, or waives the arbitration otherwise provided by FINRA Rule

12200," and allowed arbitration to proceed.[22]   Notably, although this court is not bound by the

*Golden Empire* decision, a district court in the Eastern District of North Carolina would be

bound to follow the Fourth Circuit's precedent, and allow arbitration to proceed.  Accordingly, in

the Eastern District of North Carolina, Goldman's complaint would be unavailing and NCMPA's

arbitration would proceed.

**ARGUMENT**

I.     **The Federal Arbitration Act sets venue for motions to compel or enjoin arbitration**

Congress passed the Federal Arbitration Act ("FAA") out of a concern that courts were

traditionally hostile to arbitration agreements, and refused to enforce them.[23]   Sections 2, 3, and 4

of the FAA create a legal framework to allow parties to quickly resolve questions of arbitrability

---

[20] *See UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 321 (4th Cir. 2013) (holding that language in similar forum selection clause did not preclude arbitration); *Goldman, Sachs & Co. v. City of Reno*, 3:12-CV-00327-RCJ, 2012 WL 5944966 (D. Nev. Nov. 26, 2012) (same); *UBS Sec. LLC v. Allina Health Sys.*, CIV. 12-2090 MJD/JJG, 2013 WL 500373 (D. Minn. Feb. 11, 2013) (same).  *But see Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 12 CIV. 4558 RJS, 2013 WL 500888 (S.D.N.Y. Feb. 8, 2013) (holding that language in similar forum selection clause precluded arbitration).

[21] *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 12 CIV. 4558 RJS, 2013 WL 500888 (S.D.N.Y. Feb. 8, 2013).

[22] *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 330 (4th Cir. 2013).

[23] *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001) ("[T]he FAA was a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice.").

7

and proceed with arbitration, in recognition of the FAA's policy "to eliminate the expense and delay of extended court proceedings preliminary to arbitration."[24]

Section 4 of the FAA contains specific venue provisions for actions which would exert "preliminary control" over an arbitration.[25]  The initial line of the statute is obviously permissive:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration *may* petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 … for an order that such arbitration proceed in the manner provided for in such agreement."[26]

That "permissive"[27] venue provision "quickly narrows"[28] two lines further into the statute:

> The hearing and proceedings, under such agreement, *shall* be within the district in which the petition for an order directing such arbitration is filed.[29]

This latter mandatory provision requires that the site of the arbitration and the district resolving questions of arbitrability be the same.

Courts have resolved the apparent conflict between these two provisions in three ways.[30] The Fifth Circuit ignored the latter provision and held that a district court can compel an arbitration anywhere in the country.[31]  The Fifth Circuit's approach is thus directly contrary to the language of the statute.  The Ninth Circuit has chosen the opposite tack, and held that a district court can compel arbitration within its own district regardless of the terms of the parties'

---

[24] *Trafalgar Shipping Co. v. Int'l Mill. Co.*, 401 F.2d 568, 572 (2d Cir. 1968).

[25] *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323 (7th Cir. 1995).

[26] 9 U.S.C. § 4 (emphasis added).

[27] *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 199 (2000).

[28] *Lauer*, 49 F. 3d at 327.

[29] 9 U.S.C. § 4 (emphasis added).

[30] *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1218 (10th Cir. 2005) (surveying the cases).

[31] *Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.,* 524 F.2d 1275, 1276, 1278 (5th Cir. 1975) (recognizing Mississippi district court's order directing parties to proceed with arbitration in New Jersey was contrary to express terms of § 4, but finding district court acted correctly where plaintiff sought to avoid arbitration by bringing suit in Mississippi, rather than contract forum of New Jersey, and defendant sought arbitration under terms of agreement).

arbitration agreement.[32]   The Ninth Circuit's approach thus ignores the terms of the parties' contracts.

The majority of circuits and all other courts to consider the issue, however, have followed a third approach, holding that courts can only compel an arbitration within their own district, and thus lack venue to compel an arbitration in a different district.  This approach has the virtue of honoring all of the statutory text of the FAA and the terms of the parties' arbitration agreement. It has been adopted by the Sixth Circuit,[33] the Seventh Circuit,[34] and the Tenth Circuit.[35]   This approach has also been adopted multiple times by courts in this circuit, including the Southern District of New York,[36] the Western District of New York,[37] and the Northern District of New York.[38]   As another section of this court explained in *J.P. Morgan Securities Inc. v. Louisiana Citizens Property Ins. Corp.*, 712 F. Supp. 2d 70 (S.D.N.Y. 2010), requiring that "only a district court in the forum [provided by the parties' arbitration agreement] may compel arbitration" is the only approach that "does not require the Court to ignore clear statutory language" and "protects

---

[32] *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 783 (9th Cir. 2001),

[33] *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003)

[34] *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323, 327 (7th Cir. 1995)

[35] *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220 (10th Cir. 2005).  *See also Elox Corp. v. Colt Industries, Inc.*, No. 90-2456, 1991 WL 263127, at *1 (4th Cir.  Dec. 16, 1991) ("Further, if a court orders arbitration, the arbitration must be held in the same district as the court.")*; Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.,* 499 F.2d 1391, 1394 (3d Cir. 1974) ("Despite the somewhat paradoxical situation thus possibly created, we are inclined to heed the unambiguous statutory language limiting the district court's power to order arbitration outside of the district.").

[36] *Sea Spray Holdings, Ltd. v. Pali Fin, Group, Inc.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003); *Netherlands Curacao Co., N.V. v. Kenton Corp.*, 366 F. Supp. 744, 745-46 (S.D.N.Y. 1973).

[37] *Maronian v. Am. Commc'ns Network, Inc.*, 07-CV-6314 (CJS), 2008 WL 141753 (W.D.N.Y. Jan. 14, 2008) ("Taken as a whole, Section 4 provides that a motion to compel arbitration may be brought in any district court having jurisdiction, unless the parties have agreed to a different forum, in which case, the action must be brought in the agreed-upon forum, in accordance with the parties' agreement.").

[38] *Management Recruiters of Albany, Inc. v. Management Recruiters Int'l, Inc.*, 643 F. Supp. 750, 752 (N.D.N.Y. 1986).

the contractual intent of the parties-–allowing them to arbitrate in the forum they have selected."

*Id.* at 82-83.

> II.     **The venue provisions of § 4 of the FAA are also applicable to motions to enjoin arbitration.**

In its complaint, Goldman Sachs does not cite any particular legal authority supporting this court's power to enjoin an arbitration,[39] but the Second Circuit has recently held that courts have the authority to enjoin arbitration proceedings under § 4 of the FAA, which authorizes motions to compel arbitration, because "to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present."[40] The Second Circuit held that "[i]t makes little sense to us to conclude that district courts lack the authority to order the cessation of an arbitration by parties *within its jurisdiction* where such authority appears necessary in order for a court to enforce the terms of the parties' own agreement, as reflected in a settlement agreement."[41]  The Second Circuit had previously noted in dicta that actions to stay arbitration were brought under § 4.[42]

---

[39] *See* Complaint at ¶¶ 32-36.

[40] *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 (2d Cir. 2011) (citing *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863 (1st Cir. 1981)).

[41] *Id.* at 141 (emphasis added).
Notably, the agreement referred to in that quote refers to a class action settlement agreement entered by the district court in that matter, a factual wrinkle which gave the district court continuing jurisdiction to enforce the settlement.  In *American Express*, the parties had agreed in the settlement that the court "retained exclusive jurisdiction over the Parties … for all matter relating to this Action and the Settlement, including … [the] interpretation, effectuation, or enforcement of the [Settlement Agreement]." *Id.* at 121.  The Second Circuit noted that the All Writs Act allowed the district court to exercise authority over the parties to enforce the terms of the Settlement.  It is not surprising, then, that neither party raised the issue of venue or that the Second Circuit did not address it.

[42] *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 n.3 (2d Cir. 1996) *abrogated on other grounds by Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009) ("Because we find that subject matter jurisdiction is lacking, we do not need to decide

10

District courts that have considered the issue have held that Section 4's venue provision

is equally applicable to actions to enjoin arbitrations.[43]  This approach has also been cited with

approval by the Third Circuit.[44]  And it is consistent with the Supreme Court's conclusion in

*Prima Paint*: "Section 4 does not expressly relate to situations like the present in which a stay is

---

whether the FAA gives federal courts the power to stay arbitration proceedings. While § 3 of the FAA gives federal courts the power to stay *trials* pending *arbitration,* we note that a number of courts have held that, in appropriate circumstances, § 4 of the FAA may be applied to stay or enjoin arbitration proceedings").

[43] *See Kipany Prods., Ltd. v. RMH Teleservices, Inc.*, 97 CIV. 7599 (LMM), 1997 WL 706445 (S.D.N.Y. Nov. 13, 1997) ("[T]he United States District Court for the Eastern District of Pennsylvania would not be faced with in personam jurisdiction issues since defendant is a Pennsylvania corporation with offices in that district, and *that court would also have power to compel arbitration, since the arbitration clause in question, if valid, will require arbitration in that district.* Accordingly, defendant's request for the transfer of this action to the United States District Court for the Eastern District of Pennsylvania [pursuant to 28 U.S.C. § 1406(a)] will be granted, in the interests of justice.") (emphasis added).

*See also QAI, Inc. v. Sprint Commc'ns Co.*, 120 F. Supp. 2d 1218, 1219 (C.D. Cal. 2000); *Bopardikar v. Morgan Stanley & Co. Inc.*, No. 08-CV-01136-REB-MEH, 2008 WL 2704491 (D. Colo. July 1, 2008); *Viets v. Andersen*, 1:03-CV-0682-DFH, 2003 WL 21525062 (S.D. Ind. June 26, 2003); *Prof'l Transp., Inc. v. Am. Cas. Co. of Reading, PA*, 3:06CV83 RLYWGH, 2007 WL 30554 (S.D. Ind. Jan. 3, 2007); *UAL Corp. v. Mesa Airlines, Inc.*, 88 F. Supp. 2d 910, 911 (N.D. Ill. 2000); *Bao v. Gruntal & Co., Inc.*, 942 F. Supp. 978, 979 (D.N.J. 1996); *Horizon Plastics, Inc. v. Constance*, CIV. A. 99-6132, 2000 WL 1176543 (D.N.J. Aug. 11, 2000); *Samson Offshore Co. v. Chevron U.S.A., Inc.*, 11-CV-0109-CVE-TLW, 2011 WL 1238435 (N.D. Okla. Mar. 30, 2011); *Kidder, Peabody & Co., Inc. v. Greenblatt*, C.A. 98-3155, 1999 WL 672661 (E.D. Pa. Aug. 25, 1999); *Prudential Sec., Inc. v. Desmond*, CIV. A. 96-CV-8407, 1997 WL 570926 (E.D. Pa. Sept. 5, 1997).

*But see Maronian v. Am. Commc'ns Network, Inc.*, 07-CV-6314 (CJS), 2008 WL 141753 (W.D.N.Y. Jan. 14, 2008) (holding that a district court in New York could stay an arbitration pending in Michigan where the parties arbitration agreement did not specify a venue).  Notably, in *Maronian*, the court emphasized that the parties' arbitration agreement did not contain a venue provision.  *Id.* at *4, *6 ("Respondent does not argue, for example, that this Court must transfer venue because the parties have a valid arbitration agreement containing a Michigan forum selection clause. … As discussed above, FAA § 4 provides that venue is appropriate in any district court, **subject to an agreement by the parties to arbitrate in a particular forum.**") (emphasis added).  By comparison, in this case the parties' arbitration agreement incorporates FINRA Rule 12213, which provides for arbitral venue in North Carolina.

[44] *See Dean Witter Reynolds, Inc. v. Druz*, 71 F. App'x 941, 945, n.2 (3d Cir. 2003) ("We note that had Druz raised this issue [of venue under § 4 of the FAA] at the proper juncture, he would likely have prevailed on this point, for it appears that this case should have been heard in the Southern District of New York, the district where the arbitration is to take place.").

11

575314v.4

sought of a federal action in order that arbitration may proceed. But ***it is inconceivable that Congress intended the rule to differ depending upon which party to the arbitration agreement first invokes the assistance of a federal court.***"[45]

As a court in the District of New Jersey reasoned:

> [P]laintiff concludes that Section 4 only forbids courts from "compelling"—but not "staying"—arbitrations.  The Court, however, sees no principled distinction between the two. Both are forms of injunctive relief. For both, the Court issues an injunction in another district: either (1) ordering parties to arbitrate a dispute or (2) ordering parties to refrain from arbitrating a dispute. To permit one form of injunction but not the other makes little sense.[46]

Applying the same venue standards for motions to compel and to enjoin arbitration also furthers the policy goal of the FAA, to streamline judicial proceedings prior to arbitration.  As the Second Circuit noted in *American Express*, an action to enjoin arbitration is permitted by the FAA because it is simply the inverse of the motion to compel under § 4 of the FAA.  Yet allowing different venue for the two actions would encourage forum shopping gamesmanship, as noted by the Southern District of Indiana:

> [The plaintiff] points out that his action does not fall strictly within the terms of § 4 because he seeks to enjoin an arbitration, not to compel one. This distinction does not matter here. . . . The fact that [the plaintiff] beat [the defendant] to a different courthouse door does not matter. Giving that fact any weight would invite precisely the sort of forum-shopping gamesmanship that the Seventh Circuit rejected in *Lauer,* 49 F.3d at 328.[47]

The potential for forum shopping is particularly acute where, as here, the substantive law of arbitrability differs in the two districts.  In *Bao*, the District of New Jersey recognized that there was a different handling of FINRA's six-year eligibility rule in the Third Circuit than in the Second Circuit, the site the parties had contractually agreed upon for arbitration.  The court held

---

[45] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

[46] *Horizon Plastics, Inc. v. Constance*, CIV. A. 99-6132, 2000 WL 1176543 (D.N.J. Aug. 11, 2000).

[47] *Viets v. Andersen*, 1:03-CV-0682-DFH, 2003 WL 21525062 (S.D. Ind. June 26, 2003).

575314v.4

that given "the split among the Circuits with respect to the issue of who decides arbitrability

under the six-year rule, allowing this case to proceed in the District of New Jersey would

encourage the forum shopping that § 4 was designed to prevent."[48]   Similarly here, there is

binding authority in the Fourth Circuit foreclosing Goldman's injunction action.   Allowing

Goldman to seek an injunction in this Circuit openly encourages forum shopping to avoid the

Fourth Circuit's decision.[49]

Allowing a district court to consider actions to enjoin arbitration outside its district also

encourages duplicative litigation, as explained by the Northern District of Illinois:

> The position advanced by plaintiffs [that a court can enjoin arbitration occurring
> outside its district] would lead to an anomalous and untenable result. Under
> plaintiffs' theory, if this court ruled in their favor, holding that the dispute is not
> arbitrable, the court could enjoin the arbitration, or at least enjoin defendant from
> pursuing it. If, on the other hand, the court held against plaintiffs and did not
> enjoin the arbitration, plaintiffs could ignore this court's order and force defendant
> to sue plaintiffs in Colorado to compel their compliance with the demand for
> arbitration. This is an unacceptable. Under § 4, plaintiffs' suit to enjoin the
> arbitration must be heard in the District Court of Colorado, which alone has the

---

[48] *Bao v. Gruntal & Co., Inc.*, 942 F. Supp. 978, 984 (D.N.J. 1996).  *See also QAI, Inc. v. Sprint Commc'ns Co.*, 120 F. Supp. 2d 1218, 1225 (C.D. Cal. 2000) ("This Court may properly consider "forum shopping" in this case, because the Ninth Circuit in its *PMS Distrib.* case allows for injunctive relief pending arbitration, whereas, as defendant points out, the law of the Tenth Circuit, which governs Cheetah and Sprint's contracted location of arbitration, does not appear to allow injunctive relief.  Because the results may differ, depending on whether plaintiffs file in the Tenth versus the Ninth Circuit, the Court should, on that additional ground, deny plaintiffs' application for injunctive relief.") (internal citations omitted).

[49] Goldman contends that it is "ironic" that NCMPA would complain about forum shopping, given that NCMPA chose FINRA arbitration over judicial litigation.  Pursuant to the framework created by FINRA Rule 12200, however, NCMPA is **specifically entitled** to choose the arbitral forum over the judicial forum if it so chooses.  This is the procedural framework created by the self-regulatory organization to which Goldman voluntarily belongs – customers of FINRA members can, at their option, choose the FINRA arbitration forum to resolve dispute arising from the business activities of FINRA members.  By comparison, Congress in § 4 of the FAA did not leave any discretion to the parties, but provided that the arbitral hearing "shall be within the district in which the petition for an order directing such arbitration is filed."

If Goldman is discontented with the procedural regime created by FINRA then its complaints should be directed at that organization, not at NCMPA's exercise of the options FINRA has established.

authority to compel plaintiffs to arbitrate if appropriate, and to exercise preliminary control over the arbitration.[50]

Similarly here, this action should proceed in the Eastern District of North Carolina, which alone has the authority to compel plaintiffs to arbitrate.  Accordingly, under 28 U.S.C. § 1406 this court should either dismiss the action, or transfer it to that district.

### III.    Goldman's arguments to the contrary are unavailing

In its initial response, Goldman raised several counter-arguments.  Each is unavailing.

First, Goldman contends that the line of cases holding that § 4 venue is mandatory has been overruled by the Supreme Court in *Cortez Byrd Chips, Inc. v. Bill Halbert Construction Co.*, 529 U.S. 193 (2000).  This argument entirely misrepresents the Supreme Court's holding in *Cortez Byrd Chips*, which concerns the venue provisions in § 9-11 of the FAA, none of which contain the mandatory language "shall."  The Court cites § 4 only in passing, to note that the plaintiff in *Cortex Blue Chips* compared the <u>first</u> of the two venue provisions in § 4 with §§ 9-11 and that the <u>first</u> sentence of § 4 was "more obviously permissive" than the provisions in §§ 9-11.[51]  This obviously is not an interpretation of the <u>second</u> venue provision in § 4, the one that courts have held mandates venue for motions to compel and enjoin arbitration where the parties

---

[50] *UAL Corp. v. Mesa Airlines, Inc.*, 88 F. Supp. 2d 910, 913-14 (N.D. Ill. 2000).

[51] Here is the full context of the Supreme Court's discussion of § 4:

> While Cortez Byrd points to clearly mandatory language in other parts of the Act as some indication that "may" was used in a permissive sense, cf. 9 U.S.C. §§ 2, 12, Harbert calls attention to a contrary clue in even more obviously permissive language elsewhere in the Act. See § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 ...")1). Each party has a point, but neither point is conclusive. The answer is not to be had from comparing phrases.

*Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 199 (2000).

14

specify a location for arbitration in their agreement.  Not surprisingly, both the Sixth and Tenth

Circuits held that venue under § 4 is mandatory **after** the holding in *Cortez Blue Chips*.[52]

Goldman also contends that the Second Circuit has affirmed orders enjoining arbitrations

occurring outside the district contrary to § 4 of the Act.  In each of these cases, however, the

issue of venue was not raised or briefed by either party, and the Second Circuit expressed no

view as to the appropriateness of the venue.[53]  In fact, the Second Circuit did not even address

the location of the arbitration in each opinion – for the *Citigroup* case, Goldman had to reference

***the initial complaint*** in order to determine the location of the arbitration.[54]  The fact that the

Second Circuit did not raise the venue issue *sua sponte* is not evidence that it has rejected this

argument and repudiated the FAA's venue provisions through its silence.[55]

Finally, Goldman argues that any venue restrictions in the FAA are overridden by the

forum selection clause in the parties' Broker-Dealer Agreement.  This argument was specifically

rejected by the courts in *Bopardikar v. Morgan Stanley & Co. Inc.*, No. 08-CV-01136-REB-

MEH, 2008 WL 2704491 (D. Colo. July 1, 2008) and *J.P. Morgan Sec. Inc. v. Louisiana*

*Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 74 (S.D.N.Y. 2010).  In *Bopardikar*, the plaintiff

had instituted an action to stay a FINRA arbitration occurring at the plaintiff's home location in

---

[52] *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003); *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220 (10th Cir. 2005).

[53] *See In re Am. Express*, 672 F. 3d 113 (2d Cir. 2011); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 39 (2d Cir. 2010).  Similarly, as Goldman acknowledges, this issue was not raised by the parties in *Golden Empire*.  *See also* discussion *supra* n. 41.

[54] *See* Letter from Matthew Schwartz, Docket No. 16.

[55] *Cf. Dean Witter Reynolds, Inc. v. Druz*, 71 F. App'x 941, 945, n.2 (3d Cir. 2003).  In *Dean Witter,* the Third Circuit noted that § 4 of FAA limited the venue for motion to enjoin arbitration in *Dean Witter*, but found that the party had failed to raise the argument "at the proper juncture," prior to the Summary Judgment hearing.  *See also* 28 U.S.C. § 1406 (b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.").

575314v.4

Colorado, but the Defendant sought to dismiss and/or transfer the case to the Southern District of New York because all of the parties' agreements required that "litigation of any dispute between the parties be instituted in certain courts in the state of New York."[56]   Nonetheless, since the action concerned injunction of an arbitration and such an injunction could only be issued by the court where the parties had agreed the arbitration would be held, venue was only proper in Colorado regardless of the parties' other agreements.[57]

Similarly, in *J.P. Morgan Securities*, a section of this court refused to compel an arbitration in Louisiana despite the fact that the parties had a forum selection clause in their Broker-Dealer Agreement and Auction Agreement providing that "Each party hereby consent to the exclusive jurisdiction of a state or federal court situated in New York, New York in connection with any dispute relating to any civil matter arising hereunder."[58]   Despite a much broader venue provision than at issue in this case, the *J.P. Morgan Securities* court found that it could not "compel the arbitration to proceed so long as it remains pending in New Orleans" and that the plaintiff had to seek an order to compel in that district, which court "may not be bound by [the SDNY court's] determination on this preliminary injunction motion."[59]

---

[56] *Bopardikar v. Morgan Stanley & Co. Inc.*, No. 08-CV-01136-REB-MEH, 2008 WL 2704491 (D. Colo. July 1, 2008).

[57] *Id.*

[58] *See* Reply Memo in Support of Motion for Preliminary Injunction, *J.P. Morgan Securities*, No. 10-cv-02517, (S.D.N.Y. April 14, 2010), ECF No. 17, at 3 n.4 (citing forum selection clause in parties' agreements).  *See also J.P. Morgan Sec. Inc. v. Louisiana Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 74 (S.D.N.Y. 2010) ("JP Morgan and Bear Stearns assert that they have a right to challenge FINRA's designation of New Orleans as the situs of the arbitration and that venue for the arbitration properly lies in New York.  *See* Reply Memorandum in Further Support of Plaintiffs' Motion for a Preliminary Injunction at 3.").

[59] *J.P. Morgan Sec. Inc.* at 83.

575314v.4

As in *J.P. Morgan Securities* and *Bopardikar*, venue over Goldman's action to enjoin the arbitration is not proper in this court, and this action should be dismissed or, alternatively, transferred to the United States District Court for the Eastern District of North Carolina.

## CONCLUSION

Because under § 4 of the FAA this court is not a proper venue for Goldman's action to enjoin an arbitration the parties agreed to proceed in the Eastern District of North Carolina, this action should be dismissed for improper venue or, alternatively, transferred to the United States District Court for the Eastern District of North Carolina.

April 26, 2013

Respectfully submitted,

/s/ James R. Swanson
Kevin Madonna (Bar No. 2981181)
KENNEDY & MADONNA, LLP
48 Dewitt Mills Road
Hurley, NY 12443
Office: (845) 481-2622
Fax: (845) 230-3111
kmadonna@kennedymadonna.com

James R. Swanson
Jason W. Burge
FISHMAN HAYGOOD PHELPS
WALMSLEY WILLIS & SWANSON, L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170-4600
Office: 504/586-5252
Fax: 504/586-5250
jswanson@fishmanhaygood.com
jpeiffer@fishmanhaygood.com
jburge@fishmanhaygood.com

Peter Mougey
James L. Kauffman
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
RAFFERTY & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Office: (850) 435-7147
Fax: (850) 436-6147

17

575314v.4

pmougey@levinlaw.com
jkauffman@levinlaw.com

*Attorneys for North Carolina Municipal*
*Power Agency Number One*

18

575314v.4