**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————x

GOLDMAN, SACHS & CO.,                  :
                                       :
                    Plaintiff,         :
                                       :
                                       :
          -v-                          :     13 CV 1319 (PAC)
                                       :
NORTH CAROLINA MUNICIPAL               :
POWER AGENCY NUMBER ONE,               :
                                       :
                    Defendant.         :
                                       :
                                       :
————————————————————x

**GOLDMAN, SACHS & CO.'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

SULLIVAN & CROMWELL LLP
David H. Braff
Matthew A. Schwartz
Andrew H. Reynard
125 Broad Street
New York, New York  10004-2498

*Attorneys for Plaintiff*
*Goldman, Sachs & Co.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT .......................................................................................1

I.      GOLDMAN SACHS IS LIKELY TO SUCCEED ON THE MERITS  ...........................1

      A.      There Is No Presumption in Favor of Arbitration in This Case...............................1

      B.      NCMPA1's Contention that "Actions and Proceedings"
             Does Not Encompass Arbitrations Is Simply Wrong. ..........................................3

      C.      NCMPA1 Cannot Avoid the Well-Established Case Law
             Compelling the Conclusion that the Forum Selection Clause
             Precludes the FINRA Arbitration. ...................................................................5

      D.      NCMPA1 Cannot Refute that the Forum Selection Clause
             Governs the Parties' Entire Relationship
             Regarding NCMPA1's ARS Issuance. .............................................................7

II.     NCMPA1 ESSENTIALLY CONCEDES THAT THE OTHER FACTORS
      FAVOR THE ISSUANCE OF A PRELIMINARY INJUNCTION .................................10

CONCLUSION ...................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Trust Co.* v. *Catawba Sales & Processing Co.*,
88 S.E. 2d 233 (N.C. 1955) ................................................................................9

*Applied Energetics, Inc.* v. *NewOak Capital Mkts., LLC*,
645 F.3d 522 (2d Cir. 2011) ..................................................................*passim*

*Atofina Chems., Inc.* v. *Sierra Chem. Co.*,
2004 WL 739953 (E.D. Pa. April 5, 2004) ........................................................9

*Bank Julius Baer & Co.* v. *Waxfield Ltd.*,
424 F.3d 278 (2d Cir. 2005) ..............................................................................2

*Berg* v. *Faulkner*,
2007 WL 2809911 (N.D. Tex. Sept. 27, 2007) ..................................................9

*Biremis, Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*,
2012 WL 760564 (E.D.N.Y. March 8, 2012) .....................................................5

*Brady* v. *Western Overseas Corp.*,
2009 WL 1472736 (E.D.N.Y. May 22, 2009) ....................................................2

*Citigroup Global Mkts., Inc.* v. *N.C. E. Mun. Power Agency*,
No. 13-cv-1703 (JMF) (S.D.N.Y. May 3, 2013) ........................................*passim*

*Goldman, Sachs & Co.* v. *Golden Empire Sch. Fin. Auth.*,
2013 WL 500888 (S.D.N.Y. Feb. 8, 2013) ................................................*passim*

*Granite Rock Co.* v. *Int'l Bhd. of Teamsters*,
130 S. Ct. 2847 (2010) ......................................................................................2

*In re Am. Express Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011) ...........................................................................5-6

*In re Merrill Lynch Auction Rate Sec. Litig.*,
704 F. Supp. 2d 378 (S.D.N.Y. 2010) ...............................................................7

*In re Merrill Lynch Auction Rate Sec. Litig.*,
758 F. Supp. 2d 264 (S.D.N.Y. 2010) ...............................................................7

*Personal Security & Safety Sys., Inc.* v. *Motorola, Inc.*,
297 F.3d 388 (5th Cir. 2002) .........................................................................3, 9

*Petra Cre CDO 2007-1, Ltd.* v. *Morgans Grp. LLC*,
    84 A.D.3d 614 (N.Y. 1st Dep't 2011) ...................................................................9

*Phillips* v. *Lithia Motors, Inc.*,
    2009 WL 725045 (9th Cir. March 18, 2009) ........................................................2

*Raymond James Fin. Servs., Inc.* v. *Phillips*,
    2013 WL 2096252 (Fla. May 16, 2013) ...............................................................4

*Spanski Enters., Inc.* v. *Telewizja Polska, S.A.*,
    2007 WL 1187870 (S.D.N.Y. April 23, 2007) .....................................................5

*UBS Fin. Servs., Inc.* v. *Carilion Clinic*,
    880 F. Supp. 2d 724 (E.D. Va. 2012) ...................................................................6

*UBS Fin. Servs., Inc.* v. *Carilion Clinic*,
    706 F.3d 319 (4th Cir. 2013) ..............................................................................3-4

*UBS Fin. Servs., Inc.* v. *W. Va. Univ. Hosps. Inc.*,
    660 F.3d 643 (2d Cir. 2011) ..............................................................................3, 6

**STATUTES AND RULES**

Fed. R. Civ. P. 1 .............................................................................................................4

FINRA Rules
    Rule 2268 ...........................................................................................................10
    Rule 12200 ...................................................................................................*passim*

## PRELIMINARY STATEMENT

In its opposition brief, NCMPA1 concedes that it signed a contract with an exclusive forum selection clause requiring it to bring "all actions and proceedings" against Goldman Sachs before this Court, and not before FINRA.[1]  (Opp. at 7)  That contractual stipulation should end the analysis.  Nevertheless, NCMPA1 advances several unpersuasive arguments that were squarely rejected by two recent decisions by Courts in this District, neither of which NCMPA1 even addresses:  *Goldman, Sachs & Co.* v. *Golden Empire Schools Fin. Auth.*, 2013 WL 500888 (S.D.N.Y. Feb. 8, 2013) and *Citigroup Global Mkts., Inc.* v. *N.C. E. Mun. Power Agency*, No. 13-cv-1703 (JMF) (S.D.N.Y. May 3, 2013) ("*NCEMPA*").[2]  Nothing put forward by NCMPA1 provides any basis for avoiding the parties' express forum selection clause and denying the preliminary injunction sought by Goldman Sachs.

## ARGUMENT

### I.   GOLDMAN SACHS IS LIKELY TO SUCCEED ON THE MERITS.

#### A.   There Is No Presumption in Favor of Arbitration in This Case.

NCMPA1 urges this Court to apply a general presumption favoring arbitration when assessing whether the forum selection clause in the parties' Broker-Dealer Agreement precludes NCMPA1 from pursuing its claims in the FINRA Arbitration.  (Opp. at 9)  As Judge Sullivan explained in rejecting the identical argument made by the issuer in *Golden Empire*, however, the Second Circuit has made clear that "the presumption [favoring arbitration] applies

---

[1]     Unless otherwise specified, defined terms have the meanings designated in Goldman Sachs' opening brief dated April 26, 2013 (dkt. no. 24) ("Motion" or "Mot.").

[2]     *NCEMPA* was issued on May 3, 2013, and thus was not discussed in Goldman Sachs' opening brief.  In that case, Judge Furman read an opinion from the bench permanently enjoining an identical FINRA arbitration on substantially the same grounds as Judge Sullivan adopted in the *Golden Empire* case.  The transcript of the May 3, 2013 hearing is attached as Exhibit 7 to the Declaration of Matthew A. Schwartz, sworn to on June 7, 2013 ("Schwartz Decl.").

only when the *scope* of an agreement to arbitrate is in question, not the *existence* of the agreement itself." 2013 WL 500888, at *4 (emphasis in original) (citing *Applied Energetics, Inc.* v. *NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011)).[3] And in *NCEMPA* Judge Furman agreed, ruling that "the question is not the scope of an arbitration provision, but whether there is an agreement to arbitrate at all. . . . So I do not think the presumption applies here." (Schwartz Decl. Ex. 7 (May 3, 2013 *NCEMPA* Tr.) at 67-68)

The *Golden Empire*, *NCEMPA*, and *Applied Energetics* decisions adhere to the clear mandate of the U.S. Supreme Court's ruling in *Granite Rock Co.* v. *Int'l Bhd. of Teamsters*, 130 S. Ct. 2847 (2010). There, the Supreme Court stated unequivocally: "[W]e have never held that th[e] [presumption] overrides the principle that a court may submit to arbitration *only those disputes . . . that the parties agreed to submit*." *Id.* at 2859 (emphasis added) (internal quotation marks omitted). By signing the Broker-Dealer Agreement, the parties unambiguously expressed their intent *not* to submit to arbitration.[4] Thus, there is no issue regarding the scope of any arbitration clause, and no presumption favoring arbitration here.

---

[3]      NCMPA1 cites *Bank Julius Baer & Co.* v. *Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005), in support of a presumption in favor of arbitration here. (Opp. at 9 n.30) But *Bank Julius* involved a *non-exclusive* consent to jurisdiction clause, *see* 424 F.3d at 284, and thus did not even present the issue of whether an *exclusive* forum selection clause terminated the *existence* of the agreement to arbitrate itself. *Golden Empire*, 2013 WL 500888, at *4. Accordingly, *Bank Julius* is inapposite and provides no basis on which to deviate from the Second Circuit's clear holding in *Applied Energetics*.

[4]      NCMPA1 attempts to complicate this issue by framing the parties' Broker-Dealer Agreement as a "waiver" of NCMPA1's purported right to seek arbitration under FINRA Rule 12200. (Opp. at 9) This case is not about "waiver." "Waiver," in the context of an option to arbitrate claims, occurs primarily where a party "has been dilatory in enforcing [an] arbitration clause," *Brady* v. *Western Overseas Corp.*, 2009 WL 1472736, at *3 (E.D.N.Y. May 22, 2009), or "substantial[ly] use[s] . . . court proceedings" before compelling arbitration. *Phillips* v. *Lithia Motors, Inc.*, 319 F. App'x 646, 646 (9th Cir. 2009). Rather than having "waived" anything, at issue here is whether NCMPA1 is *contractually precluded* from commencing the FINRA Arbitration as a result of its explicit agreement that it must bring "all actions and proceedings" arising out of the parties' agreements before this Court.

**B.     NCMPA1's Contention that "Actions and Proceedings" Does Not Encompass Arbitrations Is Simply Wrong.**

Like the defendants in *Golden Empire* and *NCEMPA*, which were represented by the same counsel representing NCMPA1 here, NCMPA1 advances several contorted arguments in an attempt to support its strained proposition that the contractual phrase "all actions and proceedings" does not encompass arbitrations.   (Opp. at 10-13)   But NCMPA1's sophistry cannot refute the basic point underlying the *Golden Empire* and *NCEMPA* decisions:   "the United States Supreme Court, Second Circuit, and New York State courts routinely refer to arbitrations as 'actions' or 'proceedings,' . . . and the FINRA rules [do as well]."   2013 WL 500888, at *6; (Schwartz Decl. Ex. 7 (May 3, 2013 *NCEMPA* Tr.) at 62; *see also* Mot. at 16-17). Tellingly, NCMPA1 neither attempts to rebut the reasoning of *Golden Empire* and *NCEMPA* on this issue, nor even addresses the Second Circuit's statement in *UBS Financial Services, Inc.* v. *West Virginia Hospitals, Inc.* that a contractual provision addressing the location of "actions and proceedings" "concern[ed] the site of arbitration."   660 F.3d 643, 654-55 (2d Cir. 2011); (*see also* Mot. at 17).

Instead, NCMPA1 contends that "[c]ourts across the nation have . . . held that language referencing 'actions' and/or 'proceedings' does not include arbitration."   (Opp. at 11) But almost all of the cases NCMPA1 cites for this proposition concerned the term "action," not "proceeding," and those cases are entirely distinguishable on that ground alone.   (*See* Opp. at 11 n.36)   The two exceptions—*Personal Security & Safety Systems, Inc.* v. *Motorola, Inc.*, 297 F.3d 388 (5th Cir. 2002), and *UBS Financial Services, Inc.* v. *Carilion Clinic*, 706 F.3d 319 (4th Cir. 2013)—both failed to consider how the term "proceeding" is commonly used.   *See Motorola*, 297 F.3d at 396 & n.10 (construing the terms "suit" and "proceeding" based entirely on their definitions in Webster's Third New International Dictionary (1993)); *Carilion Clinic*, 706 F.3d at

329-30 (citing solely *Motorola* and New York trial court cases addressing "special proceedings" under the N.Y. C.P.L.R.).[5]  By contrast, as the Supreme Court of Florida held recently, "a review of the common usage of the term[] used . . . [confirms that] the term 'proceeding' . . . is a broad term and includes arbitration."  *Raymond James Fin. Servs., Inc.* v. *Phillips*, 2013 WL 2096252, at *4 (Fla. May 16, 2013).  For that very reason, the *Golden Empire* and *NCEMPA* Courts concluded that the arguments adopted by the Fourth Circuit in *Carilion* for limiting "proceedings" to "judicial disputes" "amount to little more than a linguistic trick," are "patently unavailing[,] inconsistent with Second Circuit precedent," and can be "dispatched with ease." 2013 WL 500888, at *6-7; (Schwartz Decl. Ex. 7 (May 3, 2013 *NCEMPA* Tr.) at 62-63).[6]  This Court should find the same here.

---

[5]       The *Carilion* court was also swayed by the specious argument that the forum selection clause would be "nonsensical" if the term "arbitrations" was directly substituted into the phrase "actions and proceedings."  706 F.3d at 329.  But this interpretation—which the Courts in *Golden Empire* and *NCEMPA*, respectively, called a "linguistic trick," *Golden Empire*, 2013 WL 500888, at *7, and "sophistry" (Schwartz Decl. Ex. 7 (May 3, 2013 *NCEMPA* Tr.) at 63)—proves too much.  As Judge Sullivan explained in *Golden Empire*, "an analogous substitution of 'actions in the Supreme Court of New York' would be equally illogical since actions in Supreme Court cannot be brought in the Southern District.  Nevertheless, it can hardly be argued that [a case brought in the Supreme Court of New York] would fall outside of the heading of 'actions and proceedings.'"  2013 WL 500888, at *7.

[6]       NCMPA1 urges the Court to construe the Agreement in accordance with selective rules of Federal and New York procedure that have nothing to do with contract interpretation.  (*See* Opp. at 10-12)  Judge Sullivan in *Golden Empire* rejected the same arguments, observing that Federal Rule of Civil Procedure 1 "does not claim to limit" actions or proceedings outside federal court, and that the forum selection clause "makes no mention of the C.P.L.R. and suggests no such limitation."  2013 WL 500888, at *6; (*see also* Schwartz Decl. Ex. 7 (May 3, 2013 *NCEMPA* Tr.) at 62).

C.     **NCMPA1 Cannot Avoid the Well-Established Case Law
Compelling the Conclusion that the Forum Selection Clause
Precludes the FINRA Arbitration.**

NCMPA1 contends that the cases Goldman Sachs cited in its opening brief, in which forum selection clauses very similar to that in the Broker-Dealer Agreement overrode agreements to arbitrate (*see* Mot. at 14-15), are distinguishable because they contain the word "disputes" rather than "actions and proceedings."  (*See* Opp. at 12-13 & n.40)  Given that the plain meaning of the term "proceedings" includes arbitrations (*see supra* pp. 3-4), there is no meaningful distinction between "disputes" and "actions and proceedings" here.

Instead, the true distinction lies between exclusive and non-exclusive forum selection clauses.  The cases cited by NCMPA1 mostly involve *non-exclusive* forum selection clauses or simply "consent to jurisdiction" clauses that, unlike the *exclusive* forum selection clause here, do *not* preclude arbitration.  By contrast, the cases Goldman Sachs cites all involve forum selection clauses that were *exclusive*, as here.  *See, e.g.*, *Applied Energetics, Inc.*, 645 F.3d at 525-26; *Biremis, Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2012 WL 760564, at *5 (E.D.N.Y. March 8, 2012); *Spanski Enters., Inc.* v. *Telewizja Polska, S.A.*, 2007 WL 1187870 at *4-6 (S.D.N.Y. April 23, 2007); (Mot. at 12-16).  As the Second Circuit recently explained, although FINRA Rule 12200 generally requires FINRA members to arbitrate claims brought against it by its customers, Rule 12200 applies only "*in the absence of any subsequent agreement revoking or otherwise limiting the scope* of [the arbitration agreement]."  *In re Am. Express Fin.*

*Advisors Sec. Litig.*, 672 F.3d 113, 128-29 (2d Cir. 2011) (emphasis added).[7]  Here, there is

indeed such a "subsequent agreement revoking" any arguable preexisting arbitration agreement

under FINRA Rule 12200, as reflected in the plain language of the forum selection and merger

clauses.  *See Applied Energetics*, 645 F.3d at 526.[8]

        NCMPA1 is also incorrect in arguing that the forum selection clause does not

"specifically preclude" the FINRA Arbitration.  (Opp. at 17-20)  In support of that position,

NCMPA1 suggests that, "[i]f [the parties] had intended to contract out of [FINRA Rule 12200]

. . . they could have and should have included an explicit term in their written agreement."  (Opp.

at 18 & n.54 (quoting *UBS Fin. Servs., Inc.* v. *Carilion Clinic*, 880 F. Supp. 2d 724, 732 (E.D.

Va. 2012)))  But as Judge Sullivan explained in *Golden Empire*, Second Circuit law is that "a

forum selection clause need not explicitly contradict an arbitration agreement to trump it;

instead, it may simply substantively exclude it."  *Golden Empire*, 2013 WL 500888, at *5 (citing

*Applied Energetics, Inc.*, 645 F.3d at 525); (*see also* Schwartz Decl. Ex. 7 (May 3, 2013

*NCEMPA* Tr.) at 66-67 (same); Mot. at 13-14).  By requiring "*all* actions and proceedings" to be

litigated in this Court, the Broker-Dealer Agreement plainly preempts any alternative forum.

---

[7]    Contrary to NCMPA1's suggestion (Opp. at 6), Goldman Sachs does *not* agree that underwriting and broker-dealer services are sufficient to create a "customer" relationship under FINRA Rule 12200, although Goldman Sachs acknowledges that with respect to its role as broker-dealer, the Second Circuit has held otherwise in similar circumstances in *UBS Fin. Servs., Inc.* v. *W. Va. Univ. Hosps., Inc.*, 660 F.3d 643 (2d Cir. 2011).  Notably, the *UBS* Court expressly declined to rule whether *underwriting* could create a "customer" relationship, *see id.* at 650, thus calling into question the arbitrability of any claims that purportedly arise solely from that role.

[8]    NCMPA1 attempts to distinguish *Applied Energetics* (Opp. at 9 n.30, 19) by emphasizing that the arbitration agreement in *Applied Energetics* was contained in a preliminary contract that "specifically contemplated that the parties would enter into a subsequent, more formal agreement" setting forth "the terms and conditions . . . customarily contained in agreements of such character."  *Applied Energetics*, 645 F.3d at 523.  But *Applied Energetics*' holding was not based on the formality of the contracts; rather, the court based its holding on the existence of language in a superseding agreement that, as here, "plainly preclude[d] arbitration."  *Golden Empire*, 2013 WL 500888, at *4 (quoting *Applied Energetics*, 645 F.3d at 525).

**D.     NCMPA1 Cannot Refute that the Forum Selection Clause Governs
the Parties' Entire Relationship Regarding NCMPA1's ARS Issuance.**

Attempting to immunize at least some of its claims from being litigated in this
Court (where they risk dismissal at the outset) (Mot. at 1-2, 23-24),[9] NCMPA1 implausibly
contends that the sweeping exclusive forum selection clause in the Broker-Dealer Agreement
was "not intended to cover all transactions between the parties" (Opp. at 14), but rather only "the
Broker-Dealer Agreement [itself] and the subsequent transactions executed thereunder."  (Opp.
at 15)   The Courts in *Golden Empire* and *NCEMPA* correctly rejected this argument "on
[multiple] independent grounds."   2013 WL 500888, at *7-8; (Schwartz Decl. Ex. 7 (May 3,
2013 *NCEMPA* Tr.) at 62).

*First*, NCMPA1 is incorrect that the scope of the forum selection clause is limited
to the Broker-Dealer Agreement alone.  (Opp. at 14)   NCMPA1 completely ignores that the
forum selection clause applies not only to actions and proceedings arising from the Broker-
Dealer Agreement itself, but also to disputes arising "from the transactions *contemplated*
[t]hereby."  (*See* Mot. at 19 (emphasis added))  And NCMPA1 never contests that the Broker-

---

[9]     Although NCMPA1 acknowledges that "the merits of [its] claims are not at issue" here (Opp. at 2
n.1), it uses much of its Opposition to argue (incorrectly) that Goldman Sachs "provid[ed] NCMPA
advice" and made "recommend[ations]" concerning NCMPA1's bond structure (Opp. at 2-5), despite
NCMPA1's (i) retention of its own independent legal advisors for the transaction (*see* Mot. at 5), and
(ii) use of a presentation—attached as an exhibit to its Opposition—in which Goldman Sachs expressly
disclosed that it was "acting in the capacity of an arm's-length contractual counterparty" and "not as
[NCMPA1's] financial advisor or [] fiduciary."   (Declaration of Susan Ingram, sworn to on May 23,
2013, Exs. B & C, at inside cover page)

NCMPA1 also incorrectly states that Goldman Sachs "wildly misrepresents" a case regarding the
merits of NCMPA1's claims.  (Opp. at 2 n.1 (citing *In re Merrill Lynch Auction Rate Sec. Litig.*, 758 F.
Supp. 2d 264, 270 (S.D.N.Y. 2010))  Although NCMPA1 correctly notes that the *Merrill Lynch* court
found the plaintiff-issuers in that case had adequately alleged "intent to defraud" (*id.*), NCMPA1 fails to
mention that the court also found that the plaintiffs "[could not] assert that the alleged misstatements and
market manipulation caused their losses," because the "misrepresentations and omissions" alleged by the
issuer were, in fact, fully disclosed, "widely available," and "easily accessible" to it by at least August
2006.  *In re Merrill Lynch Auction Rate Sec. Litig.*, 758 F. Supp. 2d at 278-79 (citing *In re Merrill Lynch
Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 392, 397 (S.D.N.Y. 2010)).  Those same findings would be
fatal to NCMPA1's claims in the FINRA Arbitration.  (*See* Mot. at 1-2)

Dealer Agreement expressly refers to—and thus "contemplates"—the ARS issuance in both the recitals section (*see id.*) and the merger clause (*see id.* at 7). Indeed, as Judge Furman noted concerning a materially identical contract in *NCEMPA*, "the Power Agency's issuance of its [ARS] . . . [was] certainly contemplated by the [Broker-Dealer Agreement]." (*See* Schwartz Decl. Ex. 7 (May 3, 2013 *NCEMPA* Transcript) at 65)

*Second*, in addition to explicitly covering the issuance of NCMPA1's ARS, the forum selection clause is also plainly triggered here because NCMPA1's claims in the FINRA Arbitration relate to Goldman Sachs' role as the broker-dealer of the ARS. (Mot. at 20) NCMPA1 never grapples with what Judge Sullivan in *Golden Empire* gleaned from even a "cursory review" of a materially identical Statement of Claim: even assuming a "significant *portion*" of NCMPA1's claims relate to Goldman Sachs' underwriting services (Opp. at 16 (emphasis added)), the claims are nonetheless "inextricably linked to the Broker-Dealer Agreement[]." 2013 WL 500888, at *8; (Mot. at 20).[10] There is simply no avoiding that "the entirety of [NCMPA1's] dispute with Goldman [Sachs] arises from the Broker-Dealer Agreement[] and is subject to the [f]orum [s]election [c]lause[]." *Golden Empire*, 2013 WL 500888, at *8.

*Third*, NCMPA1 fails in its attempt to refute Goldman Sachs' showing in its Motion (Mot. at 21) that, because the Broker-Dealer Agreement and the Underwriter Agreement were "executed at substantially the same time and related to the same subject matter," they "must

---

[10]     NCMPA1's opposition brief itself makes clear that its claims arise from the Broker-Dealer Agreement. (*See, e.g.*, Opp. at 1 (noting that NCMPA1's alleged injuries flowed from Goldman Sachs purported decision as broker-dealer to "abandon[] the ARS market in February 2008"), at 4 (noting that fees at issue include Goldman Sachs' collection of "[b]roker-dealer fees" that "were typically twenty-five (25) basis points annually"), at 5 (claiming that "many auctions promptly failed" when "Goldman [Sachs] stopped placing bids to prop up its auctions"), at 6 (asserting that "NCMPA is entitled to proceed in FINRA arbitration against its underwriter *and broker-dealer* under FINRA Rule 12200" (emphasis added)))

be read together as one." *Petra Cre CDO 2007-1, Ltd.* v. *Morgans Grp. LLC*, 84 A.D.3d 614,

615 (N.Y. 1st Dep't 2011); *accord Am. Trust Co.* v. *Catawba Sales & Processing Co.*, 88 S.E.2d

233, 238 (N.C. 1955).  NCMPA1 argues that the Broker-Dealer Agreement and the Underwriter

Agreement should not be read together because they have "irreconcilable governing law clauses"

(Opp. at 15); but it is not "conflicting" to have different governing laws for different aspects of a

transaction and, in any event, "conflicting choice of law provisions" have "no bearing on the

effectiveness of [a non-conflicting] forum selection clause."  *Atofina Chems., Inc.* v. *Sierra*

*Chem. Co.*, 2004 WL 739953, at *5 n.9 (E.D. Pa. April 5, 2004).  Indeed, the Courts in *Golden*

*Empire* and *NCEMPA* found no such "conflict" in identical circumstances.  *See Golden Empire*,

2013 WL 500888, at *7-8; (Schwartz Decl. Ex. 7 (May 3, 2013 *NCEMPA* Tr.) at 65-66).

   Nor is NCMPA1 correct that "a forum selection clause in a single contract that is

part of a broader contractual arrangement will not foreclose arbitration of claims relating to the

broader [contract]."  (Opp. at 16)  NCMPA1's primary authority on this point, the Fifth Circuit's

opinion in *Motorola,* concerned two agreements, one of which contained a forum selection

clause and one of which contained a "broad arbitration provision." 297 F.3d at 390, 394.  Unlike

here, those agreements were "properly construed together" because they were "executed together

as part of the same overall transaction." *Id.* at 390.  Any purported agreement to arbitrate based

on FINRA Rules here could not be construed together with the Broker-Dealer Agreement

because the Rules and the Agreement were not "executed contemporaneously," and were not

intended to be read together.  *See Berg* v. *Faulkner*, 2007 WL 2809911, at *4 (N.D. Tex. Sept.

27, 2007) (explaining that *Motorola*, which considered "clearly related agreements that were

contemporaneously executed," is inapplicable where two agreements had no relation and "no

temporal proximity").  The other two cases NCMPA1 cites (Opp. at 17 n.50), in addition to

being distinguishable for the same reason as *Motorola*, are inapposite because they involved *non-exclusive* forum selection clauses.  (*See supra* p. 5)[11]

## II.   NCMPA1 ESSENTIALLY CONCEDES THAT THE OTHER FACTORS FAVOR THE ISSUANCE OF A PRELIMINARY INJUNCTION.

Goldman Sachs has already demonstrated (Mot. at 22-25) that the other factors considered on a preliminary injunction motion all heavily favor Goldman Sachs.  NCMPA1 barely contests this point, and does not dispute irreparable harm.  (Opp. at 21-22)  NCMPA1 argues only that enjoining the arbitration would cause a hardship to NCMPA1, because NCMPA1 would be deprived of a "speedy arbitration" of its claims.  (Opp. at 21-22 & n.64)  But its plea for a speedy resolution rings hollow given that (i) NCMPA1 contracted to have all claims arising out of its relationship with Goldman Sachs heard in this Court (Mot. at 6-7), (ii) NCMPA1 waited almost *five years* after the failure of the ARS market to bring its claims before FINRA (*id.* at 7-9), and (iii) NCMPA1 is attempting strategically to bring its claims in arbitration to avoid the application by this Court of the statutes of limitation to NCMPA1's claims.  (*Id.* at 23-24)

## CONCLUSION

For the foregoing reasons, Goldman Sachs respectfully requests that this Court issue an order preliminarily enjoining NCMPA1 from pursuing its claims in the FINRA Arbitration.

---

[11]      NCMPA1 is also incorrect that an interpretation of the forum selection clause that precludes arbitration "would be in violation of the rules of [FINRA], as well as the SEC."  (Opp. at 21 & n.63)  The SEC has made clear that the FINRA Rule NCMPA1 cites in support of this proposition (Rule 2268) applies specifically to "predispute *arbitration* clauses" (*see* Declaration of Jason Burge, sworn to on May 24, 2013 ("Burge Decl."), Ex. 7, at *21 (emphasis added)), not generally to "venue and forum clauses," as NCMPA1 asserts (Opp. at 21).  Further, Rule 2268 reflects a concern about preserving the right of *investors* to litigate their claims—not a concern with dispute resolution clauses executed by sophisticated entities using financial firms as underwriters and broker-dealers, as NCMPA1 did here.  With respect to the same rules cited by NCMPA1, the SEC explained that the rules "represent the promise of the SROs to maintain fair and efficient forums for the arbitration of disputes between members *and investors*."  (Burge Decl. Ex. 7, at *24-25 (emphasis added))

Dated:  June 7, 2013
       New York, New York

          By:  <u>/s/ David H. Braff</u>

              SULLIVAN & CROMWELL LLP
              David H. Braff
              Matthew A. Schwartz
              Andrew H. Reynard
              125 Broad Street
              New York, NY  10004-2498
              Telephone:  (212) 558-4000
              Facsimile:  (212) 558-3588
              Email:  braffd@sullcrom.com
                      schwartzmatt@sullcrom.com
                      reynarda@sullcrom.com

              *Attorneys for Plaintiff*
              *Goldman, Sachs & Co.*