UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
GOLDMAN SACHS, & CO.,

                       Plaintiff,

    -against-

NORTH CAROLINA MUNICIPAL
POWER AGENCY NUMBER 1,

                     Defendant.
------------------------------------------------------------ x

Case No. 13 CV 1319
Judge Paul A. Crotty

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER FOR IMPROPER VENUE**

606107v.2

# TABLE OF CONTENTS

**Page (s)**

Table of Contents ...................................................................................................................i

Summary of Argument ..........................................................................................................1

Argument ..............................................................................................................................2

    A.    Goldman does not dispute the existence of an arbitration agreement between the parties, only its applicability to this dispute ........................................................2

    B.    Venue under § 4 is mandatory, not permissive. ......................................................3

    C.    Goldman presents no legal support for "inherent authority" to enforce a forum selection clause through collateral attack ...............................................................6

    D.    Louisiana Citizens rejected Goldman's argument that venue under § 4 is waived by the parties' Governing Law clause. ......................................................................8

    E.    Public policy favors transferring the case to North Carolina. ................................9

Conclusion ...........................................................................................................................10

Defendant North Carolina Municipal Power Agency Number 1 ("NCMPA") respectfully submits this Reply Memorandum in Support of its Motion to Dismiss or, alternatively, to Transfer for Improper Venue the complaint filed by Goldman Sachs, & Co. ("Goldman").

## SUMMARY OF ARGUMENT

Through FINRA Rule 12200, the parties to this dispute have an arbitration agreement calling for arbitration of all disputes relating to Goldman's business activities with NCMPA in North Carolina. Goldman seeks an injunction by arguing that NCMPA waived its right to arbitrate this particular dispute through a forum selection clause in one of the parties' agreements. Pursuant to § 4 of the Federal Arbitration Act, as it has been interpreted by the majority of courts to consider the issue, Goldman's action must be brought in the Eastern District of North Carolina.

Goldman has three responses, each of which is unavailing. First, Goldman argues that under Supreme Court precedent, as interpreted in particular by the Ninth Circuit as well as the Western District of New York, venue under § 4 is permissive, not mandatory for motions to enjoin arbitration. But the Supreme Court did not address the clause at issue in this motion, which contains the mandatory word "shall." And the Ninth Circuit's analysis has already been rejected by two other circuits, as well as this court in *Louisiana Citizens*, whereas the Western District's analysis is consistent with NCMPA's position that this action should be dismissed or transferred.

Second, Goldman argues that this court has inherent authority to grant an injunction as specific performance of the parties' contract, but Goldman cites no persuasive authority for this proposition. Typically, parties do not enforce forum selection clauses through collateral

1

proceedings, and given that this court's authority to enjoin private arbitrations at all was an open question until 2011, that authority is plainly not inherent.

Third, Goldman contends that the forum selection clause in the parties' Broker-Dealer Agreement should trump the forum selection in the parties' arbitration agreement. But this claim was specifically rejected in the *Louisiana Citizens* case, and Goldman gives no justification to prioritize one forum selection clause over the other, particularly in light of the Congressional statute calling for venue in North Carolina. This court should dismiss the instant action for improper venue, or transfer it to the Eastern District of North Carolina.

## ARGUMENT

### A. Goldman does not dispute the existence of an arbitration agreement between the parties, only its applicability to this dispute.

At the outset, it is important to note that Goldman has not challenged whether NCMPA is its customer, and therefore an arbitration agreement exists between the parties. Pursuant to FINRA Rule 12200, NCMPA is Goldman's customer because, *inter alia*, NCMPA paid for Goldman's services both structuring the bonds (through the management fee)[1] and serving as broker-dealer for the bonds (through the broker-dealer fees). Accordingly, the parties have an arbitration agreement for all disputes arising out of Goldman's business activities under FINRA Rule 12200. And the venue for any arbitration will be NCMPA's location at the time of the dispute, in the Eastern District of North Carolina. The only issue in the present case is whether NCMPA waived its right to arbitrate the particular dispute outlined in its Statement of Claim by signing a Broker-Dealer Agreement containing a Governing Law clause.

---

[1] *See* NCMPA's Opposition to Motion for Preliminary Injunction, at 6; Declaration of Susan Ingram in Support of Motion to Dismiss, at ¶ 3.

2

Thus when Goldman argues that the parties do not have an arbitration agreement with a venue selection clause because Goldman is contesting "the very existence of an arbitration agreement,"[2] Goldman misstates the factual posture of the case. The existence of an agreement to arbitrate under Rule 12200 has not been contested. Because that arbitration agreement has broader scope than the Governing Law clause, certain disputes between the parties would be arbitrable in North Carolina.

**B. Venue under § 4 is mandatory, not permissive.**

Section 4 of the FAA provides, in part, that an arbitration hearing "*shall* be within the district in which the petition for an order directing such arbitration is filed."[3] As outlined in NCMPA's initial memorandum for this motion, the majority of courts to consider venue for motions to compel under § 4 have held that courts can only compel an arbitration within their own district, and thus lack venue to compel an arbitration in a different district. And the vast majority of courts to consider the issue of venue for a motion to enjoin arbitration have similarly held that this provision in § 4 requires that courts can only enjoin an arbitration pending within their own district. (This includes rulings both before[4] and after[5] the Supreme Court's ruling in *Cortez Byrd Chips, Inc. v. Bill Halbert Construction Co.*, 529 U.S. 193 (2000)).

---

[2] *See* Goldman's Opposition to Motion to Dismiss or, alternatively, to Transfer for Improper Venue, at 16 (hereafter, "Opp. Memo").

[3] 9 U.S.C. § 4.

[4] *See Kipany Prods., Ltd. v. RMH Teleservices, Inc.*, 97 CIV. 7599 (LMM), 1997 WL 706445 (S.D.N.Y. Nov. 13, 1997); *Bao v. Gruntal & Co., Inc.*, 942 F. Supp. 978, 979 (D.N.J. 1996); *Kidder, Peabody & Co., Inc. v. Greenblatt*, C.A. 98-3155, 1999 WL 672661 (E.D. Pa. Aug. 25, 1999); *Prudential Sec., Inc. v. Desmond*, CIV. A. 96-CV-8407, 1997 WL 570926 (E.D. Pa. Sept. 5, 1997); *UAL Corp. v. Mesa Airlines, Inc.*, 88 F. Supp. 2d 910, 911 (N.D. Ill. 2000). *But see L. F. Rothschild & Co. v. Katz*, 702 F. Supp. 464, 467-68 (S.D.N.Y. 1988).

[5] *Bopardikar v. Morgan Stanley & Co. Inc.*, No. 08-CV-01136-REB-MEH, 2008 WL 2704491 (D. Colo. July 1, 2008); *Viets v. Andersen*, 1:03-CV-0682-DFH, 2003 WL 21525062 (S.D. Ind. June 26, 2003); *Prof'l Transp., Inc. v. Am. Cas. Co. of Reading, PA*, 3:06CV83 RLYWGH, 2007 WL 30554 (S.D. Ind. Jan. 3, 2007); *Horizon Plastics, Inc. v. Constance*, CIV. A. 99-6132, 2000 WL 1176543 (D.N.J. Aug. 11, 2000); *Samson Offshore Co. v. Chevron U.S.A., Inc.*, 11-CV-0109-CVE-TLW, 2011 WL 1238435 (N.D.

Nonetheless, in its opposition, Goldman argues that venue under § 4 of the FAA is "permissive" and "liberalizing," extending rather than supplanting the general venue rules.[6] This argument is incorrect. Goldman recognizes that "shall" is mandatory language. In its motion for a preliminary injunction, Goldman argues that the Governing Law clause in the parties' Broker-Dealer Agreement is mandatory because it contains the word "shall."[7] The Supreme Court's description in *Cortex Blue Chips* of the first venue clause of § 4, which uses the word "may," as "more permissive" is not a statement about the mandatory nature of the second clause, as recognized by the two circuit courts who have held § 4 to create mandatory venue after *Cortez*.[8]

Throughout its brief, Goldman cites the Ninth Circuit's decision in *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 784 (9th Cir. 2001) for the proposition that venue under § 4 is not mandatory. But the reasoning of that case has been rejected by other courts including the Tenth Circuit, which noted that the Ninth Circuit "ignores the statutory language" of the second venue clause in § 4.[9] The majority of courts have not followed *Textile Unlimited*.[10]

---

Okla. Mar. 30, 2011); *QAI, Inc. v. Sprint Commc'ns Co.*, 120 F. Supp. 2d 1218, 1219 (C.D. Cal. 2000). The decision in *Maronian v. Am. Commc'ns Network, Inc.*, 07-CV-6314 (CJS), 2008 WL 141753 (W.D.N.Y. Jan. 14, 2008), also post-dates *Cortez*, and is discussed further below.

[6] *See* Opp. Memo at 11-12, 14-15, 18,

[7] *See* Memo of Law in Support of Goldman's Motion for a Preliminary Injunction, at 16 ("Rather, the breadth of the forum selection clause ('all actions and proceedings'), ***its mandatory nature ('shall')***, and its plain reference to judicial action ('the United States District Court in the County of New York'), must be given full effect'") (emphasis added) (citation omitted).

[8] *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003); *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220 (10th Cir. 2005).

[9] *See Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220 (10th Cir. 2005) ("[The Ninth Circuit's] approach fails to give effect to all of the § 4 statutory language directing that arbitration be in accordance with the terms of the agreement and that a district court can order arbitration only within its own district."). *See also La. Citizens*, 712 F. Supp. 70, at 82 ("[The Ninth Circuit's] interpretation requires courts to ignore a clear statutory directive—this time that the arbitration proceed in 'accordance with the terms of the agreement.' By overriding the intent of the parties' agreement, it is also contrary to the established policy that 'arbitration is a matter of consent, not coercion.'") (internal citations omitted).

[10] *See Ansari*, 414 F.3d at 1220 (surveying courts).

Further, the *Textile Unlimited* court expressly noted that the facts of the instant dispute are "factually inapposite." The *Textile Unlimited* panel noted that its analysis would not "fit [the] paradigm" of a case where "the parties [do] not contest the existence of the arbitration agreement itself and the site for arbitration [has] already been fixed." 240 F.3d 781, n.2. Those facts are present in the current case, as they were in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F. 3d 323, 329 (7th Cir. 1995). In *Lauer,* the Seventh Circuit ruled that there was a "prohibition on extrinsic orders affecting arbitration" established "both from the language of § 4 itself, prescribing a geographic nexus between the arbitration and the court issuing an order to compel, and the case law which has interpreted this as a directive to courts to abstain from controlling intervention in arbitration proceedings outside their district." *Id.* Notably, and contrary to the idea that *Lauer* is somehow vitiated by *Cortex Blue Chips*, the *Lauer* panel noted that its views are "consistent with the previous decisions of this Circuit holding that the venue provisions of §§ 9 and 10 of the FAA are permissive rather than mandatory," the principal holding in *Cortez Blue Chips*.[11] This Court should follow the majority of courts, which have sided with *Lauer's* analysis over *Textile Unlimited's*.

Goldman also cites the *Maronian* decision for the proposition that "a motion to compel arbitration may be brought in any district court having jurisdiction, unless the parties have agreed to a different forum, in which case, the action must be brought in the agreed-upon forum, in accordance with the parties' agreement."[12] But *Maronian* then goes on, two sentences later, to clarify its statement: "*[W]here there is a valid and enforceable arbitration agreement containing*

---

[11] *See Lauer*, 49, F.3d at 329 ("Viewing § 4 in this way, as a prescription for judicial economy that entails channeling prearbitration litigation into the appropriate forum, is consistent with the previous decisions of this Circuit holding that the venue provisions of §§ 9 and 10 of the FAA are permissive rather than mandatory.").

[12] Opp. Memo at 13, citing *Maronian v. Am. Commc'ns Network, Inc.*, 07-CV-6314 (CJS), 2008 WL 141753 (W.D.N.Y. Jan. 14, 2008) at *4.

*a forum selection clause*, venue is appropriate only in the selected forum." *Maronian*, at \*4. (emphasis in original).  The agreement as to forum referenced by *Maronian* would be a forum selection clause in *the parties' arbitration agreement*; one that would be implicated by the restrictive venue provision of § 4 of the FAA.  *Maronian* makes this point clear when it emphasizes "the very specific grounds on which Respondent's motion is based.  Respondent does not argue, for example, that this Court must transfer venue because the parties have a valid arbitration agreement containing a Michigan forum selection clause."[13]  Accordingly, since there was no agreement as to venue in the arbitration agreement, *Maronian* found that venue remained proper in the Western District of New York to enjoin an arbitration in another district.

In the present case, the parties have a valid arbitration agreement containing a forum selection clause.  The parties' arbitration agreement incorporates FINRA Rule 12213, which provides for arbitral venue in North Carolina.  Accordingly, even under the *Maronian* analysis, there would be mandatory venue for Goldman's motions to enjoin NCMPA's arbitration, and Goldman's action could only be brought in North Carolina.

### C. Goldman presents no legal support for this court's "inherent authority" to enforce a forum selection clause through collateral attack

Goldman next argues that § 4 of the FAA is irrelevant, because this court has inherent authority to enforce the parties' forum selection clause.  The cases cited by Goldman, however, do not support such a plenary authority.  In *A.P. Moller-Maersk v. Ocean Express Miami*, 590 F. Supp. 2d 526 (S.D.N.Y. 2008), the plaintiff contended that the defendant had filed suit in Panama and Guatemala contrary to the terms of a forum selection clause.  In determining whether to enjoin the defendant from pursuing those suits, the court followed a five-factor analysis, which factors included consideration of whether the foreign action "would be

---

[13] *Maronian* at \*5.

vexatious," would be "a threat to the issuing court's in rem or quasi in rem jurisdiction," and whether "the proceedings in the other forum prejudice other equitable considerations." *Id.* at 532-33. This lengthy analysis hardly suggests that courts enjoin collateral proceedings that were purportedly brought in violation of forum selection clauses as a matter of course.[14]

Further, it was only in 2011 that the Second Circuit addressed "the [open] question of whether federal courts have the power to stay arbitration under the FAA (*or any other authority*)" at all.[15] In *In re American Express*, the Second Circuit concluded that a district court has authority under § 4 of the FAA to enjoin an arbitration where the parties had not agreed to arbitration.[16] That would be a strange holding indeed if courts have inherent authority to issue injunctions of arbitration to enforce forum selection clauses as a standard contractual remedy.

The typical way to raise a forum selection clause is as a defense to jurisdiction and/or venue in the venue of the allegedly improper litigation or arbitration, not through a new petition seeking to collaterally enjoin the pending matter in the other jurisdiction.[17] As a FINRA member, Goldman agreed to arbitrate disputes arising from its business activities with its

---

[14] The other case cited by Goldman, *Ambac Assur. Corp. v. Adelanto Pub. Util. Auth.*, 09 CIV. 5087 JFK, 2013 WL 139557 (S.D.N.Y. Jan. 11, 2013), is entirely inapposite. That case involved a court granting relief in the form of specific performance through "an order requiring the Authority to raise the funds necessary to comply with the Swap Agreement." *Id.* at *6. The case did not even involve allegations of a violation of a forum selection clause, nor did the court consider how to dispose of a collateral proceeding.

[15] *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 (2d Cir. 2011) (emphasis added).

[16] *Id.* at 141.

[17] *Cf. Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624 (2d Cir. 1976) (holding that where questions concerning New York champerty statute and forum selection clause in agreement had been ruled adversely to defendants in Newfoundland, it would contravene public policy of New York and doctrine of comity not to recognize Canadian judgment and such judgment would be recognized in federal district court in New York as against collateral attack); *Bridgeport Machines, Inc. v. Alamo Iron Works, Inc.*, 76 F. Supp. 2d 209, 213 (D. Conn. 1999) ("Bridgeport Machines contends that the Texas action is improper since 'Alamo has consented to Connecticut state and federal courts, Connecticut jurisdiction and Connecticut law' under various forum selection clauses contained in agreements between the parties. The merits of Bridgeport Machines' arguments that the parties' dispute should be resolved in a Connecticut forum (state or federal), or should apply Connecticut substantive law, may be raised in the Texas state court which is also competent to resolve them when and where they are properly presented.")

customers, including NCMPA.  It was thus readily foreseeable that if Goldman wanted to assert that a clause in one of the several agreements between the parties barred arbitration, it might have to raise that objection in North Carolina, as it would if NCMPA had filed suit in North Carolina.  Notably, Goldman acknowledges in its pleadings that North Carolina courts routinely enforce forum selection clauses.  *See* Opp. Memo at 10.  Accordingly, there is no reason to believe Goldman's arguments about forum selection clauses would not get a full and fair hearing in the Eastern District of North Carolina – although that court would ultimately reject Goldman's forum selection clause argument, due to the *Carilion* decision.[18]

### D. *Louisiana Citizens* rejected Goldman's argument that venue under § 4 is waived by the parties' Governing Law clause

Goldman also argues that regardless of the venue under § 4, the Governing Law clause is a waiver of the venue requirements of § 4.  Opp. Memo at 6-9.  As noted in NCMPA's Memorandum in Support, this argument was flatly rejected by Judge Schiendlin in *J.P. Morgan Sec. Inc. v. Louisiana Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 74 (S.D.N.Y. 2010).  The parties in that case had a mandatory forum selection clause that was significantly *broader* than the provision in this case, calling for "all disputes" to be resolved in New York courts.[19]  Yet Judge Schiendlin still held that this court lacked jurisdiction under § 4 to compel FINRA arbitration because that arbitration was to occur outside this district in Louisiana.

Goldman's only attempt to distinguish *Louisiana Citizens* is to argue that the Plaintiff in that case did not assert that the forum selection clause was a basis for a preliminary injunction – the principal issue in the other motion presently before the court.  But there is no question that the *Louisiana Citizens* court directly considered venue under § 4, and ruled that the parties'

---

[18] *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319 (4th Cir. 2013).
[19] *See* NCMPA's Memorandum in Support of Motion to Dismiss, at 16.

forum selection clause did not waive venue. *Louisiana Citizens* is thus directly on point that a forum selection clause separate from the arbitration agreement will not waive mandatory venue under § 4.[20]  Further, Goldman gives no basis to prioritize the Governing Law clause over the forum selection clause in the parties' arbitration agreement under the FINRA rules.

### E. Public policy favors transferring the case to North Carolina

As recognized by the decisions cited in NCMPA's opening brief, mandatory venue under § 4 of the FAA streamlines litigation over arbitrability in the forum designated by the parties' arbitration clause and avoids forum shopping, races to the courthouse, and inconsistent results.  It serves all those goals here where, contrary to Goldman's protestations, the making of the agreement for arbitration is not in issue; the only issue here is whether NCMPA waived its right to arbitrate these particular claims.  Goldman's statement that if it loses this injunction action, arbitration will proceed without need for a motion to compel is perhaps a judicial admission or an offer of a stipulation, but it is certainly not a definitive legal conclusion.  As Judge Schiendlin noted when she refused to issue an order compelling arbitration in *La. Citizens*, the arbitral plaintiff in that case "would have to seek [an order compelling arbitration] in the United States District Court for the Eastern District of Louisiana," which court "may not be bound by [her] determination on this preliminary injunction motion."[21]  But for the fact that the Fourth Circuit has already rejected Goldman's arguments, Goldman might well decide that it would like a second bite at the apple by challenging arbitrability in North Carolina.  And NCMPA might nonetheless be forced to compel Goldman to arbitrate anyway.  The risk of inconsistent results is present.

---

[20] A similar conclusion was reached by the District of Colorado in *Bopardikar v. Morgan Stanley & Co. Inc.*, No. 08-CV-01136-REB-MEH, 2008 WL 2704491 (D. Colo. July 1, 2008).

[21] *La. Citizens*, 712 F. Supp. at 83, n.85.

On forum shopping, although Goldman accuses NCMPA forum shopping by seeking to resolve this dispute in arbitration, NCMPA's choice is permitted by Goldman's self-regulatory organization, FINRA, which has chosen to grant customers a non-binding option to arbitrate disputes with FINRA members like Goldman. Customers like NCMPA are given a choice of dispute resolution forums. It is an inherent aspect of that framework that customers will choose the forum they believe to be more favorable. If Goldman feels the policy decisions of FINRA regarding its arbitral framework are unwise, Goldman should direct those complaints to its self-regulatory organization, not this court. But Congress, by including mandatory language on venue in § 4 of the FAA, has not been as accommodating as FINRA regarding venue for actions to compel or enjoin arbitrations where the parties have included a forum selection clause in their arbitration agreement. This court should not permit forum shopping on questions of arbitrability, in contravention of the scheme established by Congressional statute.

## CONCLUSION

For those reasons, as well as the reasons expressed in NCMPA's initial brief, this action should be dismissed for improper venue or, alternatively, transferred to the United States District Court for the Eastern District of North Carolina.

June 7, 2013                                     Respectfully submitted,

*/s/ James R. Swanson*
Kevin Madonna (Bar No. 2981181)
KENNEDY &MADONNA, LLP
48 Dewitt Mills Road
Hurley, NY 12443
Office: (845) 481-2622
Fax: (845) 230-3111
kmadonna@kennedymadonna.com

James R. Swanson

10

        Jason W. Burge
        FISHMAN HAYGOOD PHELPS
        WALMSLEY WILLIS & SWANSON,
        L.L.P.
        201 St. Charles Avenue, Suite 4600
        New Orleans, Louisiana 70170-4600
        Office: 504/586-5252
        Fax: 504/586-5250
        jswanson@fishmanhaygood.com
        jpeiffer@fishmanhaygood.com
        jburge@fishmanhaygood.com

        Peter Mougey
        James L. Kauffman
        LEVIN, PAPANTONIO, THOMAS,
        MITCHELL,
        RAFFERTY & PROCTOR, P.A.
        316 S. Baylen Street, Suite 600
        Pensacola, FL 32502
        Office: (850) 435-7147
        Fax: (850) 436-6147
        pmougey@levinlaw.com
        jkauffman@levinlaw.com

        *Attorneys for North Carolina Municipal Power Agency Number One*