USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 9, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
                                                          :
GOLDMAN, SACHS & CO.,                                     :
                                                          :
            Plaintiff,                                  :
                                                          :    13 Civ. 1319 (PAC)
    -against-                                           :
                                                          :    OPINION AND ORDER
NORTH CAROLINA MUNICIPAL                                  :
POWER AGENCY NUMBER ONE,                                  :
                                                          :
            Defendant.                                  :
                                                          :
----------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

    This case involves a dispute over what forum is appropriate to resolve an underlying dispute concerning the issuance by Defendant North Carolina Municipal Power Agency Number One ("NCMPAI") of $149.7 million in auction rate securities ("ARS") in which Goldman, Sachs & Co. ("Goldman") acted as the underwriter and broker-dealer for the issuance. Goldman argues that this Court has exclusive jurisdiction under an applicable forum selection clause; NCMPAI argues that arbitration before the Financial Industry Regulatory Authority ("FINRA") is the appropriate forum to settle the parties' dispute. On December 12, 2012, NCMPAI initiated an arbitration in North Carolina against Goldman before FINRA to settle disputes arising from the issuance. On February 27, 2013, Goldman filed a complaint against NCMPAI in this Court seeking a declaration that the FINRA arbitration was an inappropriate forum for the dispute and an enjoinment of the arbitration. Before this Court is Goldman's motion for a preliminary injunction and NCMPAI's motion to dismiss the complaint or, alternatively, to transfer for improper venue.

Very similar issues, indeed identical issues, were recently litigated before U.S. District Judge Richard J. Sullivan (*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 440-41 (S.D.N.Y. 2013)) and U.S. District Judge Jesse Furman (*Citigroup Global Mkts., Inc. v. N.C. E. Mun. Power Agency*, No. 13 CV 1703 (S.D.N.Y. May 3, 2013), Dkt. No. 30). Both judges enjoined the FINRA arbitrations and held that under the Forum Selection Clause in the broker-dealer agreements, this Court had exclusive jurisdiction over any dispute. The Court agrees with their analysis and reasoning; and applies them here. Accordingly, the Court GRANTS Goldman's motion for a preliminary injunction; and DENIES NCMPAI's motion to dismiss the complaint or, alternatively, to transfer the case to the Eastern District of North Carolina.

## BACKGROUND

On April 11, 2003, NCMPAI issued $149.7 million in ARS in order to raise funds to refinance existing debt. ARS are "long-term bonds and stocks whose interest rates or dividend yields are periodically reset through auction." *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 335 (2d Cir. 2011). The concept is to finance long term debt at short term rates. At each periodic auction, ARS investors submit bids for the number of ARS they wish to purchase, hold, or sell at an auction and the lowest rate they will accept. *Id.* If the buy/hold orders meet or exceed sell orders, then the auction succeeds. *Id.* Alternatively, if the supply exceeds demand, the auction fails and "the issuer is forced to pay a higher rate of interest in order to penalize it and to increase investor demand." *Id.* The concept appeared to work well until the recession began in 2007-2008.

NCMPAI selected Goldman as the sole underwriter and broker-dealer for the ARS. Compl. ¶ 14. Goldman and NCMPAI signed an underwriter agreement (the "Underwriter

Agreement") describing Goldman's duties to purchase NCMPAI's ARS and to distribute them to interested investors as bona fide securities. Compl. ¶ 14; *see id.*, Ex. 5. The Underwriter Agreement did not contain an arbitration clause and provided that North Carolina law govern its validity, interpretation, and performance. Comp. ¶ 17; *see id.*, Ex. 5, at 19. Contemporaneously, the parties also signed a broker-dealer agreement (the "Broker-Dealer Agreement") setting forth Goldman's duties regarding management of the auctions and oversight of the bidding process. Compl. ¶ 15; *see id.*, Ex. 3. The Broker-Dealer Agreement provided that New York law would govern, waived jury trial, and specified the following forum selection clause ("Forum Selection Clause"):

> The parties agree that all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York and that, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such court.

Compl. ¶ 16; *id.*, Ex. 3, at 14. The Broker-Dealer Agreement also contained a merger clause (the "Merger Clause") providing as follows:

> This Broker-Dealer Agreement, and the other agreements and instruments executed and delivered in connection with the issuance of the []ARS, contain the entire agreement between the parties relating to the subject matter hereof, and there are no other representations, endorsements, promises, agreements or understandings . . . between the parties relating to the subject matter hereof.

Compl. ¶ 19; *id.*, Ex. 3, at 13.

The market for ARS collapsed in the recession that started in 2007-2008. *See UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 646 (2d Cir. 2011). On December 21, 2012, NCMPAI instituted a FINRA arbitration in Raleigh, North Carolina against Goldman by filing a Statement of Claim ("SOC"), pursuant to FINRA Rule 12200. Compl. ¶ 20; *see id.*, Ex. 2. FINRA Rule 12200 requires that FINRA members arbitrate a dispute when a customer

3

requests arbitration and the dispute arose in connection with the business activities of a FINRA member. In its SOC, NCMPAI alleged that Goldman created the artificial appearance of an efficient market for ARS by placing its own bids in every auction in which it was lead broker-dealer. Compl. ¶ 21-23; *see id.*, Ex. 2. Further, NCMAPI claims that Goldman did not disclose its full use of these bids, known as "cover bids," and therefore made material misrepresentations and/or omissions. Compl. ¶¶ 21-23; *see id.*, Ex. 2. On February 27, 2013, Goldman filed a complaint in this Court seeking declaratory relief and an injunction against the FINRA Arbitration.

On April 26, 2013, NCMPAI moved to dismiss Goldman's complaint or, alternatively, to transfer the case to the U.S. District Court for the Eastern District of North Carolina pursuant to Federal Rule of Civil Procedure 12(b)(3).[1] NCMPAI argues that this Court lacks the authority to enjoin an arbitration pending in a different district. On the same day, Goldman moved for an order preliminarily enjoining NCMPAI from pursuing its claims against Goldman in the FINRA arbitration.[2] Goldman alleges that the parties agreed to bring all disputes relating to the ARS issuance to this Court pursuant to the Forum Selection Clause in the Broker-Dealer Agreement.

## DISCUSSION

### I.  Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party seeking a preliminary

---

[1] NCMPAI's Memorandum in Support of Its Motion to Dismiss or, Alternatively, to Transfer for Improper Venue will be referred to as "Def.'s Mot. to Dismiss." Goldman's Memorandum of Law in Opposition to Defendant's Motion to Dismiss or, Alternatively, to Transfer for Improper Venue will be referred to as "Pl.'s Opp'n to Mot. to Dismiss." NCMPAI's Reply Memorandum in Support of Its Motion to Dismiss or, Alternatively, to Transfer for Improper Venue will be referred to as "Def.'s Reply Mot. to Dismiss."

[2] Goldman's Memorandum of Law in Support of Its Motion for a Preliminary Injunction will be referred to as "Pl.'s Mot. for Prelim. Inj." NCMPAI's Memorandum in Opposition to Goldman's Motion for Preliminary Injunction will be referred to as "Def.'s Opp'n to Prelim. Inj." Goldman's Reply Memorandum of Law in Further Support of Its Motion for a Preliminary Injunction will be referred to as "Pl.'s Reply Mot. for Prelim. Inj."

injunction must establish: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). The moving party carries the burden of persuasion to demonstrate "by a clear showing" that the necessary elements are satisfied. *See Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis omitted).

Whether Goldman is likely to succeed on the merits depends, in part, on the outcome of NCMPAI's Rule 12(b)(3) motion. On a motion to dismiss for improper venue under Rule 12(b)(3), "the plaintiff bears the burden of establishing that venue is proper." *French Transit, Ltd. v. Modern Coupon Sys., Inc.*, 858 F. Supp. 22, 25 (S.D.N.Y. 1994); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). "The court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits." *McKeown v. Port Authority of N.Y. and N.J.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001).

II. Analysis

    A. Likelihood of Success on the Merits

        1. This Court Has the Authority to Enjoin an Arbitration in Other District Courts

It is well established that a "federal court sitting as a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere." *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 263 (2d Cir. 2012) (internal quotations omitted); *see Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 647 (2d Cir. 1956). Only "the clearest command from Congress" may strip a district court of this power. *Califano v.*

*Yamasaki*, 442 U.S. 682, 705 (1979). NCMPAI claims that this Court lacks the authority to enjoin the FINRA Arbitration pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq*. *See* Def.'s Mot. to Dismiss at 7-13. The FAA, however, is silent on a court's authority to enjoin arbitrations.

Instead, NCMPAI asks this Court to convert the FAA's provision for a court's power to compel arbitration to a court's power to stay arbitration. Section 4 of the FAA provides that an aggrieved party "*may* petition any United States district court" with subject-matter jurisdiction over the action for an order compelling arbitration pursuant to the terms of an arbitration agreement. *See* 9 U.S.C. § 4 (emphasis added). The text continues and provides that the "hearing and proceedings, under such [arbitration] agreement, *shall* be within the district in which the petition for an order directing such arbitration is filed." *See id.* (emphasis added). Despite the conflicting language in the statute, NCMPAI urges that a district court may only compel arbitration within its own district under § 4. *See* Def.'s Mot. to Dismiss at 9-10. Since a motion to enjoin arbitration "is simply the inverse of the motion to compel under § 4 of the FAA," the argument runs, a court may only stay an arbitration occurring within its own district. *See id.* at 10-14. NCMPAI cites numerous cases, but none are binding on this Court. *Id.* Rather, this Court agrees with Judge Furman's rejection of this argument. *See* Transcript of Oral Argument at 56:24-59:14, *Citigroup Global Mkts., Inc.*, No. 13 CV 1703, Dkt. No. 30.

Section 4 of the FAA does not inhibit or prevent a district court from enjoining an arbitration pending in another district. Prior to the FAA's enactment, a civil suit could generally be brought only in the district in which the defendant resided. *See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 199 (2000). The FAA's venue provisions were intended to have a "liberalizing effect" by both expanding the choice of venue; and providing for the

6

enforcement of forum selection agreements. *Id.* at 199-200. Section 4 embodies both of these policies by providing permissive venue rules, 9 U.S.C. § 4 (stating that a party "may petition any United States district court"), restricted by the parties' contractual choice of forum, *id.* (requiring that the "hearing and proceedings, under [an arbitration] agreement, . . . be within the district in which the petition for an order directing such arbitration is filed"). Read together, Section 4 provides that any district court with jurisdiction may compel arbitration, unless the parties have agreed otherwise. *See Maronian v. Am. Commc'ns Network, Inc.*, No. 07-CV-6314, 2008 WL 141753, at *4 (W.D.N.Y. Jan. 14, 2008). When a plaintiff seeks to enjoin arbitration, however, that party is contesting the very existence of an arbitration agreement, including any contractual choice of forum. Since Section 4's restrictions do not apply if the parties did not agree to arbitrate in a specific forum, a party seeking to enjoin arbitration is only subject to Section 4's permissive venue rules.

NCMPAI argues that the venue standard for motions to compel arbitration must apply to motions to enjoin because "it is inconceivable that Congress intended the rule to differ depending upon which party to the arbitration agreement first invokes the assistance of a federal court." *See* Def.'s Mot. to Dismiss at 11-12 (internal quotations omitted). But the two motions are fundamentally different. Unlike a motion to compel, a motion to enjoin arbitration questions the very validity of an arbitration agreement and therefore implicates the central concern of arbitration—whether a party is being forced to arbitrate a dispute when that party has not consented to arbitration. *See In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113 (2d Cir. 2011) (("As is clear from the Supreme Court's and this Circuit's cases, arbitration under the FAA is a matter of consent, not coercion." (internal quotations omitted)); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[A]rbitration is a matter of contract and a

party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Here, NCMPAI claims that only the Eastern District of North Carolina can enjoin the FINRA Arbitration. Yet NCMPAI agreed to bring "all actions and proceedings arising out of [the] Broker-Dealer Agreement" in this Court. *See* Compl. ¶¶ 15-16. Goldman cannot be expected to bring its claims in a venue dictated by FINRA Rule 12200 when it asserts that this rule has no bearing on its claims.

NCMPAI cites to *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113 (2d Cir. 2011), holding that district courts may enjoin an arbitration when a valid and binding agreement to arbitrate is absent. *Id.* at 141. NCMPAI claims that the court's use of the phrase "within its jurisdiction" prohibits a court from enjoining arbitrations outside of its own district. *See* Def.'s Mot. to Dismiss at 10 (quoting *In re Am. Express*, 672 F.3d at 141). Yet nothing in the decision limits a district court's authority. It is equally likely that the term "jurisdiction" related to personal jurisdiction, which, if absent, prevents a court from enjoining a defendant's conduct in other districts. *See* Transcript of Oral Argument at 57:15-58:4, *Citigroup Global Mkts., Inc.*, No. 13 CV 1703, ECF No. 30; *cf. Califano*, 442 U.S. at 705 ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have [personal] jurisdiction."). Furthermore, the Second Circuit neither relied on § 4 directly nor suggested that it limits a court's ability to stay arbitration. Instead, the court merely confirmed that a court may stay arbitration without violating the FAA.

NCMPAI also claims that application of the same standard for motions to compel arbitration and to enjoin it is necessary to promote three policy goals. First, according to NCMPAI, restricting injunctions to the district in which the arbitration was brought would

"eliminate the expense and delay of extended court proceedings" and "streamline judicial proceedings" prior to arbitration. *See* Def.'s Mot. to Dismiss at 8, 12. This saves no time, however, because, by NCMPAI's own admission, it is only implicated *after* a court has decided that arbitration is proper. Second, NCMPAI argues that its position would prevent forum shopping, the potential for which is "particularly acute where, as here, the substantive law of arbitrability differs in the two districts." *See* Def.'s Mot. to Dismiss at 12-14. But who is forum shopping? NCMPAI's sole purpose in moving for dismissal or transfer is to arbitrate and/or litigate in the presumptively more favorable forum of the Eastern District of North Carolina. In situations like the present case, venue is proper where the arbitration is held or where the parties specified in the forum selection clause. Although this may lead to minimal forum shopping, this policy goal alone does not compel a different result. Third, NCMPAI claims that allowing a district court to enjoin arbitrations outside its district would "encourage duplicative litigation" because a plaintiff could ignore an unfavorable ruling and then force the opposing party to move to compel in the district where arbitration would occur. *Id.* at 13-14. Yet where a party seeks to enjoin an ongoing arbitration, as here, this risk cannot materialize. As a result, NCMPAI's policy concerns must be rejected.

Accordingly, this Court holds that FAA § 4 does not limit a district court's ability to enjoin an arbitration outside of its district. Without a "clear[] command from Congress" otherwise, *see Califano*, 442 U.S. at 705, this Court may enjoin the FINRA Arbitration, if Goldman establishes that the Forum Selection Clause waived NCMPAI's right to arbitration and that the present dispute falls within the scope of that clause.

    2.    **The Forum Selection Clause in the Broker-Dealer Agreement Superseded the Arbitration Agreement**

This Court now considers whether NCMPAI and Goldman waived the right to arbitration under FINRA Rule 12200 by signing the Broker-Dealer Agreement. If an agreement neither "specifically precludes" nor provides "positive assurance" that a dispute is no longer subject to arbitration, then the agreement must be read as maintaining the right to arbitrate. *See Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 525 (2d Cir. 2011); *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005). For example, in *Bank Julius Baer*, the Second Circuit held that a broad agreement to arbitrate was not overridden by a later-executed, non-exclusive forum selection clause because the clause did not mention arbitration and could be read as waiving objection to "jurisdiction" in New York over ancillary proceedings. 424 F.3d at 282. Alternatively, in *Applied Energetics*, the Second Circuit held that the contracting parties specifically precluded arbitration by executing an agreement that "[a]ny dispute" between the parties "shall be adjudicated" in New York, even though the agreement did not explicitly mention arbitration. 645 F.3d at 525.

Here, the Broker-Dealer Agreement provides "positive assurance" that the parties intended to preclude arbitration. The Forum Selection Clause requires that "all actions and proceedings arising out of [the] Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York." The clause plainly references judicial action by specifying the "United States District Court." *See Applied Energetics, Inc.*, 645 F.3d at 525 (stating that the word "adjudicate" is a "clear and unmistakable reference to judicial action"). Its use of the mandatory language "all actions and proceedings" and "shall" preclude resolution of disputes anywhere other than within this district. *See id.* (holding that the use of "shall" demonstrated that the clause precluded arbitration); *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 387-88 (2d Cir. 2007) (holding

that the forum selection clause was "mandatory" when it used the phrase "are to be brought"). Furthermore, the parties included a merger clause providing that "there are no other representations, endorsements, promises, agreements or understandings . . . between the parties relating to the subject matter hereof." *See Applied Energetics*, 645 F.3d at 525-26 & n.2 (holding that an identical merger clause displaced a prior arbitration agreement). Read together, the Forum Selection Clause and the Merger Clause demonstrate that the parties intended the Broker-Dealer Agreement to prevail over FINRA Rule 12200.

Two of NCMPAI's arguments fail from the start, based on contrary Second Circuit holdings. NCMPAI claims that FINRA Rule 12200 must be construed liberally to effectuate the purposes of the FAA. *See* Def.'s Opp'n to Mot. for Prelim. Inj. at 9. But the presumption in favor of arbitration applies only when there are "doubts concerning the scope of an arbitration clause," not when, as here, there are "disputes concerning whether an agreement to arbitrate has been made." *See Applied Energetics*, 645 F.3d at 526. Next, NCMPAI argues that "the waiver of arbitration must be explicit for this later agreement to revoke an earlier agreement." Def.'s Opp'n to Mot. for Prelim. Inj. at 17-20. Again, NCMPAI misconstrues *Applied Energetics*. There, the court explained that a forum selection clause need not mention arbitration to revoke an earlier arbitration agreement. 645 F.3d at 525. Instead, the clause may simply substantively exclude it. *Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d at 440-41; *see Applied Energetics*, 645 F.3d at 525.

NCMPAI marshals two arguments in support of its position that arbitration is neither an "action" nor a "proceeding" under the Forum Selection Clause. *See* Def.'s Opp'n to Mot. for Prelim. Inj. at 10-13. NCMPAI first relies on New York State statutes that use the words "actions" and "proceedings" to discuss judicial proceedings. *See* N.Y. C.P.L.R. § 103 (defining

civil judicial disputes as "actions" or "proceedings"), N.Y. C.P.L.R. § 304 ("An action is commenced by filing a summons and complaint or summons with notice. . . . A special proceeding is commenced by filing a petition . . . ."). Yet neither statute limits the terms to judicial actions and the Forum Selection Clause suggests no such limitation. Furthermore, courts commonly refer to arbitrations as "actions" or "proceedings." *See, e.g., Citigroup Global Mkts., Inc.*, 598 F.3d at 32 ("[Defendant] began arbitration proceedings against [plaintiff] before the FINRA pursuant to FINRA Rule 12200."); *Wachovia, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 888 F. Supp. 2d 380, 382 (S.D.N.Y. 2012) ("Plaintiffs . . . commenced this action against defendant . . . to enjoin an arbitration proceeding . . . ."). In fact, NCMPAI's own pleading in the FINRA Arbitration uses these terms, *see, e.g.*, Compl., Ex. 2, at 37 ("NCMPAI prays that . . . after due proceedings had, there be an award in its favor . . . ."), and FINRA rules do too, *see, e.g.*, FINRA Rule § 12208 ("At any stage of an arbitration proceeding . . . ."). To limit "actions" and "proceedings" to judicial actions would run contrary to the plain and commonly accepted meaning of these terms.

    NCMPAI also claims that the Broker-Dealer Agreement's waiver of a trial by jury in any "action or proceeding" provides further support. *See* Def.'s Opp'n to Prelim. Inj. at 10. The Forum Selection Clause states that each party "IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIMS ARISING OUT OF THIS BROKER-DEALER AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY." Compl., Ex. 3, at 14. But this provision immediately follows the statement that "all actions and proceedings . . . [must be brought in] the United States District Court in the County of New York." *Id.* Because the term "proceeding" is already limited to proceedings before this Court, there is no inherent tension between the two sentences, as NCMPAI claims. The first

sentence simply requires that all actions or proceedings be brought in the Southern District of New York and the second states that no jury trial is available for those proceedings. As a result, NCMPAI's interpretation of the terms "actions" and "proceedings" must be rejected.

Nor does this Court's holding create an "unnecessary conflict," as NCMPAI asserts. *See* Def.'s Opp'n to Prelim. Inj. at 20-21. The Forum Selection Clause and FINRA Rule 12200 cannot be read as complementary. Instead, "this case falls within the alternative scenario . . . , where contracting parties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration." *See Applied Energetics, Inc.*, 645 F.3d at 524-25. As a result, this Court holds that the Broker-Dealer Agreement precludes arbitration under FINRA Rule 12200.

### 3. The Present Dispute Falls Within the Scope of the Forum Selection Clause

The Forum Selection Clause in the Broker-Dealer Agreement governs the parties' entire contractual relationship relating to the ARS transaction. Despite NCMPAI's arguments to the contrary, *see* Def.'s Opp'n to Prelim. Inj. at 14, the clause's language supports its application to the present dispute. The Forum Selection Clause controls "all actions and proceedings arising out of [the] Broker-Dealer Agreement or any of the transactions contemplated hereby." Compl., Ex. 3, at 14. NCMPAI asserts that the ARS issuance arose out of the Underwriter Agreement, but that is not so. The Broker-Dealer Agreement was clearly predicated on the ARS issuance occurring. In fact, the first paragraph of the Agreement's preamble explicitly references the transaction. *See* Compl., Ex. 3 at 1 ("WHEREAS, the Issuer is issuing $149,700,000 in aggregate principal amount of its Catawba Electric Revenue Bonds, Refunding Series 2003C . . . .") The ARS issuance therefore constitutes a "transaction contemplated" by the Broker-Dealer Agreement and, as such, falls within the scope of the Forum Selection Clause.

NCMPAI's FINRA claims are also tied to the Broker-Dealer Agreement. The claims focus on whether Goldman failed to disclose its use of "cover bids" to support the ARS auctions in its role as broker-dealer. In particular, Goldman purportedly failed to disclose that it "always placed a bid in every auction in which it was lead broker-dealer to prevent auction failure, and that Goldman was aware at all times that if it failed to place a bid for its own account in the auctions it managed, a large number . . . of the actions would fail and the market for ARS would collapse." Compl., Ex. 2, ¶ 49; *see* Def.'s Opp'n to Mot. for Prelim. Inj. at 4. NCMPAI brought its action to recover damages it sustained due to these claimed misrepresentations and omissions, which were made "during the structuring process and during the 5 years that Goldman . . . served as [a] broker-dealer[] for NCMPAI's bonds." Compl., Ex. 2, ¶ 4. In fact, throughout the SOC, NCMPAI references Goldman's role as a "broker-dealer" and describes Goldman's failure to fulfill its responsibilities as such. *See, e.g.*, SOC ¶ 2 ("For the next five years, Goldman served as broker-dealer for NCMPAI's ARS, earning hundreds of thousands of dollars in periodic broker-dealer fees while continuing to fail to disclose [the use of cover bids.]"). NCMPAI cannot wish away the terms of the Broker-Dealer Agreement when its claims are based on Goldman's actions as a broker-dealer.

Any conflict between the governing law provisions in the Broker-Dealer Agreement and the Bond Contract of Purchase is not dispositive on whether the Forum Selection Clause applies to the overall ARS issuance. New York law governs the Broker-Dealer Agreement, *see* Compl., Ex. 3, at 14, while North Carolina law governs the Bond Contract of Purchase, *see* Compl., Ex. 5, at 19. But different governing law can control different pieces of a transaction without creating any conflict. Furthermore, even if the clauses are "irreconcilable," *see* Def.'s Opp'n to

Prelim. Inj. at 14-15, a conflict between governing law provisions does not overcome a non-conflicting forum selection clause that, by its terms, encompasses the present dispute.

Accordingly, Goldman has established that the Forum Selection Clause applies to the present dispute. This Court therefore holds that Goldman is likely to succeed on the merits of its action for declaratory and permanent injunctive relief.

### B.  Irreparable Harm

Goldman will suffer irreparable harm absent a preliminary injunction in this case. "As a matter of law, there is irreparable harm when a party is 'compelled to arbitrate . . . without having agreed to arbitration' because that party is 'forced to expend time and resources arbitrating an issue that is not arbitrable.'" *NASDAQ OMX Group, Inc. v. UBS Secs. LLC*, No. 13 Civ. 2244, 2013 WL 3942948, at *12 (S.D.N.Y. June 18, 2013) (quoting *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010)). NCMPAI does not dispute that Goldman will suffer irreparable harm, *see* Def.'s Opp'n to Prelim. Inj. at 21-22, and this Court holds that this requirement is satisfied.

### C.  Balance of the Equities

Goldman has also established that the balance of the equities decidedly tips in its favor. "The balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Golden Empire Schs. Financing Auth.*, 922 F. Supp. 2d at 444 (quoting *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999)) (internal quotations omitted). Here, Goldman would be "forced to expend time and resources arbitrating an issue that is not arbitrable." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003). On the other hand, NCMPAI argues that a preliminary injunction would frustrate its right to a speedy arbitration of its claims. *See* Def.'s

Opp'n to Prelim. Inj. at 21-22. But NCMPAI's argument is based entirely on *UBS v. W. Va. Univ. Hosps., Inc.*, 760 F. Supp. 2d 373 (S.D.N.Y. 2011), *aff'd in part, vacated in part on other grounds*, 660 F.3d 643 (2d Cir. 2011), where the court held that plaintiffs failed to establish a likelihood of success on the merits. *Id.* at 379. Any potential hardship on NCMPAI's right to arbitration is minimal because Goldman will likely demonstrate that NCMPAI is not entitled to arbitration. Furthermore, NCMPAI's four-year delay in bringing its claims suggests that the alleged need for a speedy arbitration process is hollow. *See Goldman Empire*, 922 F. Supp. 2d at 444. As a result, the balance of the equities decidedly tips in Goldman's favor.

### D.     The Public Interest

NCMPAI argues that an injunction would not be in the public interest because there is a federal policy favoring arbitration. *See* Def.'s Opp'n to Prelim. Inj. at 22. But this presumption only applies when the parties have agreed to arbitration, *see Applied Energetics*, 645 F.3d at 526, and here they did not. Instead, an injunction would favor the public interest because it would enforce the terms of a valid and enforceable contract between the parties.

## CONCLUSION

Goldman has established that it is entitled to a preliminary injunction, *see Winter*, 555 U.S. at 20, and this Court accordingly GRANTS the motion. Since Goldman established a likelihood of success on the merits, NCMPAI's motion to dismiss or, alternatively, to transfer for improper venue is DENIED.

Dated: New York, New York
December 9, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge